**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DARLENE MANSON, DEBORAH and KEITH NICHOLAS, GERMANO DEPINA, ROBERT LANE and ANN COILEY, DONNA FORD and CHARLES TUCKER, ADAM KAYI, ROBERTO SZUMIK and GERALDO DOSANJOS, on behalf of themselves and all others similarly situated, ) ) ) ) ) ) ) | Nos. 08-CV-12166-RGS 09-CV-10168-RGS |
| Plaintiffs, ) ) ) ) ) ) | **AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| v. ) ) | |
| GMAC MORTGAGE, LLC, AVELO MORTGAGE, LLC, and U.S. BANK NATIONAL ASSOCIATION, as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates 2006-EQ, as Trustee for Credit Suisse First Boston MBS ARMT 2005-2, as Trustee for Credit Suisse First Boston 2005-9, and as Trustee for Credit Suisse First Boston 2005-10, SALLIE MAE HOME LOANS, INC., EMC MORTGAGE CORPORATION, on behalf of themselves and as representatives for all others similarly situated, and HARMON LAW OFFICES, P.C. and ABLITT LAW OFFICES, P.C., ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Leave to File Granted on August 25, 2009** |
| Defendants. ) | |

## I. INTRODUCTION

1.      In this Amended Consolidated Class Action Complaint, Plaintiffs seek, *inter alia*, the injunction of various foreclosure and eviction proceedings, for themselves and others similarly situated, based on the Defendants' routine failure to comply with statutory prerequisites to foreclosure.  Plaintiffs Darlene Manson, Deborah and Keith

Nicholas, Germano DePina, Robert Lane and Ann Coiley, Donna Ford and Charles

Tucker, Adam Kayi, Robert Szumik, and Geraldo Dosanjos ("Named Plaintiffs") and the

class they seek to represent, also seek a determination of the validity of foreclosure sales

held in violation of statutory requirements, together with damages and other relief.

2.      The Commonwealth of Massachusetts has longstanding, statutorily

prescribed non-judicial foreclosure procedures, by entry and/or by power of sale, with

minimal consumer protections for homeowners.  G.L. c. 244 § 1 *et seq*.  Homes are

normally foreclosed pursuant to the statutory power of sale, without a pre-foreclosure

court hearing except to establish that the mortgagor is not in active military service on

duty overseas.  G.L. c. 183, § 21; *Beaton v. Land Court*, 367 Mass. 385 (1975).

3.      The law is clear, however, that entities foreclosing on mortgages must

strictly comply with the Commonwealth's statutory prerequisites to foreclosure.  Among

other things, as a matter of black letter law, the entity exercising the right to foreclose

must have actual legal authority to enter the property and/or to exercise the power of sale.

G.L. c. 244, §§ 1, 14; G.L. c. 183, § 21.

4.      In recent years, many foreclosing entities, including the Defendants, have

dispensed with this fundamental requirement.  Such entities foreclose, through their

counsel, without having first obtained assignment of the mortgage and the power of sale

on the property they purport to foreclose.

5.      Massachusetts' foreclosure process has become an undisciplined and

lawless rush to seize homes. Many thousands of foreclosures are plainly void under

statute and settled Massachusetts case law.  Most borrowers never obtain accurate

statutorily required notices, Land Court judgments are entered based on foreclosing

counsel's inaccurate recitations concerning ownership of the mortgage, and homes are resold without a proper chain of title.

6.      Plaintiffs in this matter seek relief for the Defendants' wrongful foreclosure practices.  They seek declaratory and injunctive relief concerning the validity of foreclosures conducted by entities who do not hold a power of sale at the time of the sale, injunction of eviction actions pending procedures to verify the validity of the underlying sales, injunction of upcoming sales where there is no proof of assignment, cancellation of fees and costs for invalid sale processes, and damages.

7.      In addition, this Amended Consolidated Complaint seeks recovery for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and Mass. G.L. c. 93A.

8.      Plaintiffs seek such relief on their own behalf and on behalf of a class of similarly situated individuals.

## II.  JURISDICTION AND VENUE

9.      In its Order of March 18, 2009 (Docket No. 66), the Court found that subject matter jurisdiction exists pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) and 1453.  In addition, this Amended Consolidated Complaint adds allegations pursuant to the FDCPA.  This Court therefore also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

10.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) inasmuch as the challenged actions are alleged to have been committed in this District, all Defendants regularly conduct business in this District, and all the Named Plaintiffs reside in this District.

### III.    PARTIES

11.    Plaintiff Darlene Manson is a natural person who lived at 11 Summer Street, Stoneham, MA 02180 for more than 35 years.  Her home was purportedly foreclosed by an auction held pursuant to the power of sale on March 25, 2008 and she was scheduled to be evicted from the home on November 25, 2008.  The eviction was postponed following the filing of the initial complaint in this matter.

12.    Plaintiffs Deborah and Keith Nicholas are natural persons who reside at 22 Linvale Terrace, Mattapan, MA 02126, a two family home.  Their home was purportedly foreclosed by an auction held pursuant to the power of sale on August 8, 2008.  Mr. and Mrs. Nicholas are now subject to eviction proceedings at any time.

13.    Plaintiff Germano DePina is a natural person who resides at 5 Tupelo Street, Roxbury, MA 02119, with his wife and two-year old son.  His home was scheduled for a foreclosure sale on January 19, 2008, but the foreclosure was postponed following the filing of the First Amended Complaint in this matter.

14.    Plaintiffs Robert Lane and Anne Coiley are natural persons who reside at 5 Edenwood Avenue, Billerica, MA 01821.  Their home was purportedly foreclosed by an auction held pursuant to the power of sale on September 15, 2008.  Mr. Lane and Ms. Coiley were the subject of a summary process action to evict them from their home, Housing Court Dept., Northeast Division Docket No. 0977-SP-0353, but that action was dismissed by stipulation. Mr. Lane and Ms. Coiley remain subject to eviction at any time.

15.    Plaintiffs Donna Ford and Charles Tucker are natural persons and Massachusetts residents who formerly lived for 14 years at 198-200 Elm Street, Everett,

MA 02149.  This home was purportedly foreclosed by an auction held pursuant to the power of sale on May 8, 2007.

16.    Plaintiff Adam Kayi a/k/a Abderrahman Kayi, is a natural person who resides at 55 Gordon Street, Allston, MA 02134.

17.    Plaintiff Roberto Szumik, is a natural person who resides at 30 Middlesex Road, Apartment 12, Waltham, MA 02452.

18.    Plaintiff Geraldo Dosanjos, is a natural person who resides at 545 Heath Street, Apartment 1, Chestnut Hill, MA 02467.

19.    Defendant GMAC Mortgage, LLC ("GMAC") is a corporate entity, with a business address of 1100 Virginia Drive, P.O. Box. 8300, Fort Washington, PA  19034. GMAC, through various agents, purportedly conducted a foreclosure sale of Ms. Manson's property.  GMAC has conducted or may conduct other foreclosures in Massachusetts.

20.    Defendant Avelo Mortgage, LLC ("Avelo") is a corporate entity, with a business address of 250 East John Carpenter Freeway, Irving, TX 75062.  Avelo, through various agents, purportedly conducted a foreclosure sale of the home of Mr. and Mrs. Nicholas.  On information and belief, Avelo has been integrated with another loan servicing company known as Litton Loan Servicing LP.  Avelo, as well as its successors, have conducted or may conduct other foreclosures in Massachusetts.

21.    Defendant U.S. Bank National Association, Defendant in this action as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates 2006-EQ, as Trustee for Credit Suisse First Boston MBS ARMT 2005-2, as Trustee for Credit Suisse First Boston 2005-9, and as Trustee for Credit Suisse First

Boston 2005-10 ("U.S. Bank") is a corporate entity with a business address of 425

Walnut Street, Cincinnati, OH 45202.  U.S. Bank, through various agents, is in the

process of conducting a foreclosure on Mr. DePina's home as Trustee for the Structured

Asset Securities Corporation Mortgage Pass-Through Certificates 2006-EQ.  U.S. Bank,

through various agents, conducted the foreclosure on Ms. Ford's and Mr. Tucker's

former home as Trustee for Credit Suisse Boston MBS ARMT 2005-2.  U.S. Bank,

through various agents, conducted the foreclosure on Mr. Szumik's home as former home

as Trustee for Credit Suisse Boston 2005-10. U.S. Bank, through various agents,

conducted the foreclosure on Mr. Dosanjos's former home as Trustee for Credit Suisse

Boston 2005-9.  U.S. Bank acts as trustee for hundreds of similar securitized mortgage

pools that have conducted or may conduct foreclosures in Massachusetts on

Massachusetts properties.

22.    Defendant EMC Mortgage Corporation ("EMC") is a corporate entity with

a business address of 2780 Lake Vista Drive, Lewisville, TX 75067-3884.  EMC, through

various agents, conducted the foreclosure on the home of Ann Coiley and Robert Lane.

EMC has conducted or may conduct other foreclosures in Massachusetts.

23.    Defendant Sallie Mae Home Loans, Inc. ("Sallie Mae") is a corporate

entity with a business address of 28175 Cabot Drive, Suite 100, Novi, MI 48377.  Sallie

Mae is a division of SLM Corporation, incorporated in Delaware and headquartered at

12601 Bluemont Way, Reston VA 20190.  Sallie Mae, through various agents, conducted

the foreclosure sale on Mr. Kayi's former home.  Sallie Mae has conducted or may

conduct other foreclosures in Massachusetts.

24.    In this Complaint, GMAC, Avelo, U.S. Bank, EMC and Sallie Mae are referred to collectively as the "Named Foreclosing Defendants."

25.    Defendant, Harmon Law Offices, P.C. ("Harmon Law"), is a private law firm whose practice includes the execution of thousands of foreclosure sales on an annual basis in the Commonwealth. Harmon Law's offices are located at 150 California Street, Newton, Massachusetts 02458.  Harmon Law conducted the foreclosure sales on Ms. Manson's property, on Ms. Ford's and Mr. Tucker's property, on Mr. Szumik's property, on Mr. Dosanjos's property and is executing the foreclosure process on Mr. DePina's home for U.S. Bank.

26.    Defendant, Ablitt Law Offices, P.C. ("Ablitt Law"), is a private law firm whose practice includes the execution of hundreds of foreclosure sales on an annual basis in the Commonwealth.  Ablitt Law's offices are located at 304 Cambridge Road, Woburn, Massachusetts 01801.  Ablitt Law conducted the foreclosure sale on the home of Mr. and Mrs. Nicholas and the home of Robert Lane and Ann Coiley.

27.    Defendant Nicholas Barrett & Associates ("Nicholas Barrett"), is a private law firm whose practice includes the execution of foreclosure sales in the Commonwealth.  Nicholas Barrett's offices are located in East Providence, Rhode Island. Nicholas Barrett conducted a foreclosure on Adam Kayi's property.

28.    In this Complaint, Harmon Law, Ablitt Law and Nicholas Barrett are referred to collectively as the "Law Firm Defendants."

## IV. LEGAL AND FACTUAL BACKGROUND

29.    Recent data shows that the rate of foreclosures has doubled nationwide in the last year, with one in every 171 houses nationwide receiving a foreclosure notice. *See* J.W. Elphinstone, "U.S. Foreclosure Filings More Than Double" in *The Boston Globe* (July 25, 2008) *available at* http://www.boston.com/business/articles/2008/07/25/us_foreclosure_filings_more_than_double_in_2q/

30.    The Commonwealth is also experiencing a foreclosure crisis.  From 2006 to 2007, the Massachusetts foreclosure rate nearly tripled.  In 2008, the problem accelerated.  Over the course of 2008, there were approximately 22,000 petitions filed in the Land Court seeking authorization to foreclose.

31.    In the past four years, in a rush to foreclose, the Defendants and others have foreclosed many mortgages in Massachusetts without holding the necessary rights as the mortgagee or as an assignee of the original mortgagee at the time of foreclosure.

32.    Only a "mortgagee" may foreclose by entry under Massachusetts law. G.L. c. 244, § 1.

33.    The statutory power of sale, incorporated by reference in virtually all Massachusetts residential mortgages, including those at issue in this case, provides for foreclosure sales only by "the mortgagee or his executor, administrators, successors or assigns."  G.L. c. 183 § 21.

34.    Relevant statutory procedures for exercising the power of sale do not expand the category of entities authorized to exercise the power.  A power of sale may be exercised only by "the mortgagee or person having his estate in the land mortgaged, or a

person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator [of any entity or person authorized to exercise a power of sale]." G.L. c. 244 § 14.

35.    The form of foreclosure notice contained in G.L. c. 244, § 14 contains language that provides that where the foreclosing entity holds "by assignment, or in any fiduciary capacity" a reference to that instrument must be provided.

36.    A recent amendment to the statute also requires that, as a prerequisite to foreclosure "the mortgagee" give written notice of, *inter alia*, the right to cure "containing the name and address of the mortgagee or anyone holding thereunder." Acceleration and enforcement of the mortgage cannot occur until at least ninety (90) days after the date such notice is given. G.L. c. 244, § 35A.

37.    Mortgages, and by extension, rights under mortgages may be assigned, but a valid written assignment, consistent with the statute of frauds, is a prerequisite to effective assignment.  G.L. c. 259, § 1; *Warden v. Adams*, 15 Mass. 233 (1818).  Absent effective assignment, an entity has no rights as a "mortgagee" to exercise a power of sale or to send notices required by the statute.

38.    Strict compliance with the statutory requirements for exercise of the power of sale has long been required under Massachusetts law. *See, e.g. McGreevey v. Charlestown Five Cents Savings Bank*, 294 Mass. 480, 483-84 (1936); *Moore v. Dick*, 187 Mass. 207, 211-212 (1905). This longstanding public policy is grounded not just in protection of property owners, but also in the proper maintenance of title records and the orderly succession of ownership of land.

39.     A foreclosure sale conducted by an entity that does not have legal authority to conduct the sale is void under Massachusetts law. G.L. c. 244, § 14;  *Roche v. Farnsworth*, 106 Mass. 509 (1871); *Bottomly v. Kabachnick*, 13 Mass. App. Ct. 480, 483-84 (1982); *U.S. Bank National Association v. Ibanez,* No. 384283, 2009 WL 795201 (Mass. Land Ct. March 26, 2009).

40.     Notices that do not comply with Massachusetts law because they are not from the mortgagee or someone acting under the authority of the mortgagee are void.  *See Roche v. Farnsworth*, 106 Mass. 509 (1871); *Bottomly v. Kabachnick*, 13 Mass. App. Ct. 480, 483-84 (1982).

41.     A foreclosing mortgagee owes the mortgagor a duty of good faith and reasonable diligence in the foreclosure process.  *See Williams v. Resolution GGF OY*, 417 Mass. 377, 382-83 (1994).

42.     Knowing failure to send legally correct statutorily required notices is inconsistent with the duty of good faith and reasonable diligence. Exercise of a power of sale without proper legal authority is also inconsistent with the duty of good faith and reasonable diligence.

43.     Failure to send proper notice of foreclosure deprives homeowners of a fair opportunity to prevent the sale.  Absent notice and/or evidence of the assignment, notices frequently are sent by an entity with whom the homeowner has never had any previous communication.  In addition, some homeowners have multiple mortgages.  In some cases, they cannot tell from the notice which mortgage is being foreclosed.

44.     In addition to black letter law on the subject, the Defendants have known or should have known of the problem of routine unauthorized foreclosure for several

years.  GMAC, U.S. Bank and Avelo, have all been involved, either directly or through a

corporate affiliate, in judicial foreclosure proceedings in New York State in which the

existence of a proper assignment to the foreclosing entity was found lacking.  *See*

*Ameriquest Mortgage Co. v. Basevich*, No. 147/07, 2007 WL 1815992 (N.Y. Sup. Ct.

June 26, 2007) (GMAC); *U.S. Bank Nat. Assn. v. Bernard*, No. 29003/07, 2008 WL

383814 (N.Y Sup. Ct. Feb. 14, 2008) (U.S. Bank); *Wells Fargo Bank, N.A. v. Farmer*,

No. 27296/07, 2008 WL 2309006 (N.Y. Sup. Ct. June 5, 2008) (Avelo via successor

Litton Loan Servicing, LP).

45.    In addition, Joel B. Rosenthal, a United States bankruptcy judge in the

District of Massachusetts recently wrote that rising foreclosures were resulting in a

greater number of lenders that, "in their rush to foreclose, haphazardly fail to comply

with even the most basic legal requirements of the bankruptcy system." *In re Maisel*, 378

B. R. 19, 20-21 (Bankr. D. Mass. 2007).  Among other things, he has pointed out that

lenders and servicers are seeking to foreclose and otherwise to pursue homeowners in

foreclosure without the requisite legal authority to do so. *In re Schwartz*, 366 B.R. 265

(Bankr. D. Mass. 2007).

46.    Further, numerous state and federal courts have enforced the bedrock rule

that foreclosures cannot be completed without a valid assignment of the underlying

mortgage including, without limitation, courts in Connecticut, Ohio, Florida, Illinois,

Minnesota and Michigan.  *See In re Foreclosure Cases*, 2007 WL 3232430 (N.D. Ohio

October 31, 2007); *Bayview Loan Servicing, L.L.C. v. Nelson*, 382 Ill. App. 3d 1184 (Ill.

Ct. App. 2008); *Davenport v. HSBC Bank*, 275 Mich. App. 344 (Mich. Ct. App. 2007);

*Fleet National Bank v. Nazareth*, 818 A. 2d 69 (Conn. Ct. App. 2003); *Jeff-Ray*

*Corporation v. Jacobson*, 566 So. 2d 885 (Fla. 4th D. Ct. 1990); *relying on Marianna & B.R. Co. v. Maund*, 62 Fla. 538 (1911); *Moore v. Carlson*, 128 N.W. 578 (Minn. 1910). On information and belief, no states allow foreclosures by entities that do not have a valid written assignment consistent with the statute of frauds.

## V.    INDIVIDUAL FACTS

### A.    Darlene Manson

47.    Darlene Manson is a 62 year-old woman, who is significantly and permanently disabled by multiple sclerosis.  Prior to the events described below, she lived for 35 years at her home, 11 Summer Street in Stoneham, Massachusetts ("the Manson Property"), which she purchased with her late husband, who handled the family's financial affairs.

48.    After Ms. Manson's husband died in 2001, she added her son and his wife to the deed in order to help them get a start in life and has since owned the property with them as tenants in common.

49.    On or about October 24, 2006, Ms. Manson, her son and his wife entered into a loan with Aegis Lending Corporation ("Aegis"), a Louisiana-based lender, on unfair and expensive subprime terms.  The complicated terms of the loan made it difficult or impossible for Ms. Manson to understand. Nine months later, the Commissioner of Banks revoked Aegis's license to do business in the Commonwealth.  Shortly thereafter, Aegis filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware.

50.    The mortgage associated with the loan, which expressly incorporates the statutory power of sale, was made in favor of an entity known as Mortgage Electronic

Registration Systems, Inc. ("MERS"), as nominee for Aegis and the Aegis's successors and assigns ("Manson MERS Mortgage").

51.     A true and correct copy of the Manson MERS mortgage is attached hereto and labeled Exhibit A.

52.     When Ms. Manson's son and daughter-in-law separated and her son lost his job, Ms. Manson began to fall behind on payments.

53.     Ms. Manson did not receive notice of assignment of the mortgage by MERS or Aegis.

54.     In or about January 2008, Harmon Law, purporting to act on behalf of GMAC as plaintiff, initiated a Complaint in the Land Court ("Manson Land Court Complaint"), seeking to foreclose the Manson Property.  The Manson Land Court Complaint states that GMAC "is the assignee and holder of a mortgage with the statutory power of sale" on the property.

55.     A true and correct copy of the Manson Land Court Complaint is attached hereto and labeled Exhibit B.

56.     At the time of the Manson Land Court Complaint, both GMAC and Harmon Law knew or should have known that GMAC did not have a valid assignment of the mortgage, consistent with the statute of frauds, from Aegis or MERS.

57.     An Order of Notice was issued by the Land Court on or about January 22, 2008 ("Manson Order of Notice").  The Manson Order of Notice reflects the representation in the Manson Land Court Complaint that GMAC is the holder of the mortgage.  Ms. Manson was served with the Manson Order of Notice.

58.    A true and correct copy of the Manson Order of Notice is attached hereto and labeled Exhibit C.

59.    At the time of the service of the Manson Order of Notice, both GMAC and Harmon Law knew or should have known that GMAC did not have a valid assignment of the mortgage, consistent with the statute of frauds, from Aegis or MERS.

60.    On February 27, 2008, March 5, 2008 and March 12, 2008, Harmon Law, as attorney and agent for GMAC, caused to be published in a publication titled The Stoneham Independent a "Notice of Mortgagee's Sale of Real Estate" identifying GMAC as the present holder of the mortgage. ("Manson Publication Notice").

61.    A true and correct copy of the Manson Publication Notice is attached hereto and labeled Exhibit D.  It was filed, along with GMAC's foreclosure deed and affidavit in the Middlesex County (Southern District) Registry of Deeds at Book No. 51139, Page No. 197.

62.    On February 19, 2008, Harmon Law, as attorney and agent for GMAC, sent correspondence labeled "Notice of Intention to Foreclose Mortgage and of Deficiency After Foreclosure of Mortgage" ("Manson Notice of Intention"). The Manson Notice of Intention indicates that GMAC is the present holder of the mortgage, but includes no reference to an assignment.

63.    The Manson Notice of Intention contained the following statement in bold, capitalized typeface:  "**PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**"

64.     A true and correct copy of the Manson Notice of Intention is attached hereto and labeled Exhibit E.

65.     Ms. Manson also received a communication from Harmon Law entitled "Notice of Mortgage Foreclosure Sale" along with a legal description of the mortgaged property ("Manson Notice of Sale").  The Manson Notice of Sale appears to be intended to meet the requirements of G.L. c. 244, § 14.

66.     The Manson Notice of Sale is signed by GMAC as "present holder" of the mortgage.

67.     The Manson Notice of Sale provides a reference to the recorded mortgage by deed book and page, but includes no reference to an assignment to GMAC, as provided for on the form of notice contained in the statute.

68.     A true and correct copy of the Manson Notice of Sale is attached hereto and labeled Exhibit F.

69.     At the time of the Manson Publication Notice, the Manson Notice of Intention and the Manson Notice of Sale, both GMAC and Harmon Law knew or should have known that GMAC did not have a valid assignment of the mortgage, consistent with the statute of frauds, from Aegis or MERS.

70.     On March 25, 2008, Harmon Law conducted a foreclosure sale by auction pursuant to the statutory power of sale of the Manson Property on behalf of GMAC.  At the foreclosure sale, GMAC purchased the Manson property.  The outcome of the foreclosure sale is memorialized in a foreclosure deed executed by Andrew S. Harmon of Harmon Law ("Manson Foreclosure Deed").

71.     Harmon Law also issued a "Certificate of Entry" on March 25, 2008, stating that GMAC is the current holder of the mortgage ("Manson Certificate of Entry").

72.     True and correct copies of the Manson Foreclosure Deed and the Manson Certificate of Entry are attached hereto together and labeled Exhibit G.

73.     At the time of the foreclosure sale, both GMAC and Harmon Law knew or should have known that GMAC did not have a valid assignment of the mortgage, consistent with the statute of frauds, from Aegis or MERS.

74.     The mortgage was not assigned to GMAC by MERS until April 29, 2008, a date approximately five weeks after the foreclosure sale.  A written assignment ("the Manson Assignment") was executed on that date.

75.     In the Manson Assignment, *executed on April 29, 2008*, MERS represents itself to be holder of the mortgage it is assigning to GMAC.

76.     The Manson Assignment is executed on behalf of MERS by Andrew S. Harmon.  On information and belief Andrew S. Harmon is an attorney who is a shareholder in and an employee of Harmon Law, which also represented GMAC in the foreclosure proceedings.

77.     A true and correct copy of the Manson Assignment is attached hereto and labeled Exhibit H.

78.     The Manson Land Court Complaint, the Manson Order of Notice, the Manson Notice of Intention, the Manson Notice of Sale and the Manson Certificate of Entry were all inaccurate when signed and misrepresented the authority of GMAC to act under the mortgage.

79.     The foreclosure sale of the Manson Property is void under Massachusetts law.

80.     On information and belief, Ms. Manson was charged substantial attorneys' fees and costs in excess of $2000 for this invalid foreclosure action.

81.     On April 21, 2008, also before the date of the Manson Assignment, Harmon Law, acting on behalf of GMAC, commenced a summary process eviction proceeding in Woburn District Court.  Harmon Law has obtained judgment and a writ of execution on that judgment.

82.     Ms. Manson was scheduled to be evicted on November 25, 2008, just two days before Thanksgiving.  Following the filing of the initial complaint in this action on November 20, 2008, Ms. Manson's eviction was postponed to a date not identified by Harmon or GMAC.

83.     Unable to cope with the stress of being subject to eviction at any time, Ms. Manson has vacated her home of 35 years for a temporary living situation elsewhere.

**B.      Deborah and Keith Nicholas**

84.     Deborah and Keith Nicholas, who reside at 22 Linvale Terrace in Mattapan / Boston, Massachusetts (the "Nicholas property"), are husband and wife who are employed as a security guard and a custodian, respectively.  In 2006, they attended a first-time homebuyer class that was advertised by an outfit named Zeus Funding.  A representative from Zeus Funding told Mr. and Mrs. Nicholas that they had been approved for a mortgage and set them up with a realtor to find their first home.  Subsequently, Zeus Funding was the subject of an unfair and deceptive trade practices lawsuit and temporary restraining order by the Massachusetts Attorney General.

85.    At the behest of Zeus Funding, Mr. and Mrs. Nicholas entered into a loan with SouthStar Funding, Inc. on or about June 30, 2006 on unfair and expensive subprime terms.

86.    The mortgage associated with the loan, which expressly incorporates the statutory power of sale, was made in favor of MERS, as mortgagee and nominee for SouthStar Funding, Inc.

87.    A true and correct copy of the Nicholas MERS mortgage is attached hereto and labeled Exhibit I.

88.    After exhausting their life-savings in an attempt to meet their monthly mortgage obligation, Mr. and Mrs. Nicholas began to fall behind on payments.

89.    Mr. and Mrs. Nicholas did not receive notice of assignment of the Nicholas MERS mortgage by MERS or any other entity at any time

90.    In or about July 2007, Ablitt Law, purporting to act on behalf of Avelo, filed a Complaint in the Land Court, seeking to foreclose the Nicholas Property ("Nicholas Land Court Complaint").  The Nicholas Land Court Complaint states that Avelo "is the assignee and holder of a mortgage with the statutory power of sale" on the property.

91.    A true and correct copy of the Nicholas Land Court complaint is attached hereto and labeled Exhibit J.

92.    At the time of the Nicholas Land Court complaint, both Avelo and Ablitt Law knew or should have known that Avelo did not have a valid assignment of the mortgage, consistent with the statute of frauds, from MERS.

93.     An Order of Notice was issued by the Land Court on or about July 26, 2007 ("Nicholas Order of Notice").  The Nicholas Order of Notice reflects Ablitt Law's representation in the Nicholas Land Court Complaint that Avelo is the current holder of the Nicholas MERS mortgage.

94.     A true and correct copy of the Nicholas Order of Notice is attached hereto and labeled Exhibit K.

95.     At the time of the service of the Nicholas Order of Notice, both Avelo and Ablitt Law knew or should have known that Avelo did not have a valid assignment of the mortgage, consistent with the statute of frauds, from MERS.

96.     On July 15, 2008, July 22, 2008 and July 29, 2008, Ablitt Law, as attorney and agent for Avelo, caused to be published in a publication titled The Boston Globe a "Notice of Mortgagee's Sale of Real Estate" identifying Avelo as the present holder of the mortgage. ("Nicholas Publication Notice").

97.     A true and correct copy of the Nicholas Publication Notice is attached hereto and labeled Exhibit L.  Although this copy is barely legible, it represents an accurate reproduction of the document attached to the affidavit and Foreclosure Deed, recorded at the Suffolk County Registry of Deeds, Book 44314, Page 303, by Avelo in connection with the Nicholas Property.

98.     On or about June 3, 2008, Mr. and Mrs. Nicholas received a Notice of Intention to Foreclose Mortgage and Deficiency After Mortgage ("Nicholas Notice of Intention") together with a "Notice of Mortgage Sale" ("Nicholas Notice of Sale") from Ablitt Law.  Each of these notices indicated that Ablitt Law was undertaking foreclosure proceedings on the Nicholas MERS mortgage on behalf of Avelo.  Likewise, each of

these notices indicated that Avelo was the current holder of the mortgage.  The Nicholas Notice of Sale provides a reference to the Nicholas MERS Mortgage by deed book and page, but includes no reference to an assignment to Avelo, as provided for on the form of notice contained in the statute.

99.    True and correct copies of the Nicholas Notice of Intention and the Nicholas Notice of Sale are together attached hereto as Exhibit M.

100.    On August 8, 2008, Ablitt Law, on behalf of Avelo, conducted a foreclosure sale by auction pursuant to the statutory power of sale of the Manson Property contained in the Nicholas MERS Mortgage.  The outcome of this foreclosure is reflected in a Foreclosure Deed executed on November 12, 2008 ("Nicholas Foreclosure Deed").

101.    Ablitt Law issued a "Certificate of Entry" on August 8, 2008 that states that Avelo is the current holder of the Nicholas MERS mortgage ("Nicholas Certificate of Entry").

102.    True and correct copies of the Nicholas Foreclosure Deed and the Nicholas Certificate of Entry are attached hereto together and labeled Exhibit N.

103.    At the time of the Nicholas Land Court Complaint, the Nicholas Order of Notice, the Nicholas Publication Notice, the Nicholas Notice of Intention, the Nicholas Notice of Sale, the Nicholas Foreclosure Deed and the Nicholas Certificate of Entry, both Avelo and Ablitt Law knew or should have known that Avelo did not have a valid assignment of the Nicholas MERS mortgage, consistent with the statute of frauds, from MERS.

20

104.    The Nicholas MERS mortgage was not assigned to Avelo by MERS until November 18, 2008, 2008, a date over three months after the foreclosure sale and certificate of entry.  A written assignment ("the Nicholas Assignment") was executed on that date.

105.    In the Nicholas Assignment, *executed on November 18, 2008*, MERS represents itself to be holder of the mortgage it is assigning to Avelo, despite Avelo's previous representations to the contrary.

106.    A true and correct copy of the Nicholas Assignment is attached hereto and labeled Exhibit O.

107.    Each of the Land Court pleadings and the notices listed above were inaccurate when signed and misrepresented the authority of Avelo to act under the mortgage.

108.    The foreclosure sale of the Nicholas Property is void under Massachusetts law.

109.    On information and belief, Mr. and Mrs. Nicholas were charged substantial attorneys' fees and costs in excess of $2000 for this invalid foreclosure action.

110.    Mr. and Mrs. Nicholas continue to live in their home, but are now in constant fear of an eviction action.

**C.    Germano DePina**

111.    Germano DePina resides at 5 Tupelo Road in Roxbury / Boston, Massachusetts ("the DePina property") with his wife and two-year old son.  Mr. DePina is employed as a union warehouseman for a grocery store chain, although he is currently injured and receiving worker's compensation benefits.

21

112.    On or about April 20, 2006, Mr. DePina purchased the DePina property with two loans from EquiFirst Corporation ("EquiFirst"), both secured by mortgages.

113.    The mortgage associated with the larger loan, which expressly incorporates the statutory power of sale, was made in favor of MERS as nominee for EquiFirst ("the DePina MERS Mortgage").

114.    A true and correct copy of the DePina MERS mortgage is attached hereto and labeled Exhibit P.

115.    In or about December 2007, Mr. DePina began to experience financial difficulty and was unable to obtain refinancing for the DePina Property.  He began to fall behind on the DePina MERS Mortgage payments.

116.    On or about January 7, 2008, Harmon Law sent a letter to Mr. DePina indicating that U.S. Bank purported to be the present holder of the DePina MERS Mortgage.  Harmon Law's January 7, 2008 letter indicated that the loan was being accelerated due to a default and included information concerning how Mr. DePina could reinstate the loan and cure the debt default.

117.    The bottom of the January 7, 2008 letter from Harmon Law to Mr. DePina contained the following statement in bold, capitalized typeface:  "**PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

118.    A true and correct copy of the January 7, 2008 letter from Harmon Law to Mr. DePina is attached hereto and labeled Exhibit Q.

119.    In or about April 7, 2008, Harmon Law, purporting to act on behalf of U.S. Bank, caused an Order of Notice to be issued from the Land Court, notifying Mr. DePina of his rights under the Servicemembers Civil Relief Act ("DePina Order of Notice") with regard to its foreclosure of the DePina MERS Mortgage.  On information and belief, the corresponding Land Court Complaint was brought on behalf of U.S. Bank rather than MERS.

120.    At the time of the service of the January 7, 2008 letter, the DePina Order of Notice, both U.S. Bank and Harmon Law knew or should have known that U.S. Bank did not have a valid assignment of the DePina MERS Mortgage, consistent with the statute of frauds, from MERS or any other entity.

121.    A true and correct copy of the DePina Order of Notice is attached hereto and labeled Exhibit R.

122.    On information and belief, in or about April 2008, Harmon Law, as attorney and agent for U.S. Bank, caused a "Notice of Mortgagee's Sale of Real Estate" to be appear in a newspaper published in Boston or a newspaper with a general circulation in Boston. ("DePina Publication Notice").

123.    On or about April 30, 2008, Mr. DePina received a "Notice of Intention to Foreclose Mortgage and of Deficiency After Foreclosure of Mortgage" from Harmon Law ("DePina Foreclosure Notice") as attorney and agent of U.S. Bank.  This notice informed Mr. DePina that U.S. Bank purported to be the holder of the DePina MERS Mortgage and that it intended to foreclose on or after May 30, 2008.

124.    A true and correct copy of the DePina Foreclosure Notice is attached hereto and labeled Exhibit S.

125.    At the time of the DePina Publication Notice and DePina Foreclosure Notice, both U.S. Bank and Harmon Law knew or should have known that U.S. Bank did not have a valid assignment of the DePina MERS Mortgage, consistent with the statute of frauds, from MERS or any other entity.

126.    The DePina Foreclosure Notice and its accompanying enclosures appear to be intended to meet the requirement of G.L. c. 244, § 14.

127.    The DePina Foreclosure Notice and its enclosures provide reference to the DePina MERS Mortgage by deed book and page, but include no reference to an assignment to U.S. Bank, as provided for on the form of notice contained in the statute.

128.    On or about May 30, 2008, Harmon Law wrote a letter to Mr. DePina notifying him that the foreclosure sale scheduled for that day would be postponed until July 16, 2008.  This date was also postponed while Mr. DePina negotiated with his loan servicer.

129.    Following the filing of the First Amended Complaint, the foreclosure sale on the DePina property was indefinitely postponed by Harmon Law.

130.    On information and belief, U.S. Bank did not have a valid written assignment of the DePina MERS Mortgage, consistent with the statute of frauds, from MERS or any other entity, at the time foreclosure proceedings were initiated against him and continuing through to the filing of the First Amended Complaint in this action.

131.    U.S. Bank cannot hold a valid foreclosure sale of the DePina property because it has not provided notice of sale consistent with G.L. c. 244, § 14.  Nor has it met other statutory requirements to foreclose.

132.    On information and belief, Mr. DePina has already incurred substantial attorneys' fees and costs for this invalid foreclosure action.

**D.    Robert Lane and Ann Coiley**

133.    Ann Coiley and Robert Lane ("Coiley and Lane") reside together at 5 Edenwood Avenue, Billerica, MA 01821 ("Coiley and Lane Property").  They have lived in this home for fourteen years.  As a result of chronic diabetes, Ms. Coiley is legally blind.

134.    On or about September 19, 2006, Coiley and Lane entered into a loan with Argent ("Argent"), on unfair and expensive subprime terms.  The complicated terms of the loan made it difficult or impossible for Coiley and Lane to understand

135.    The mortgage associated with the loan, which expressly incorporates the statutory power of sale, was made in favor of Argent as mortgagee ("Coiley and Lane Mortgage").

136.    A true and correct copy of the Coiley and Lane Mortgage is attached hereto and labeled Exhibit T.

137.    For a variety of reasons, Coiley and Lane were unable to make payments under the terms of the loan.

138.    Coiley and Lane did not receive notice of assignment of the mortgage by Argent.

139.    In or about November 2007, Ablitt Law, purporting to act on behalf of EMC as plaintiff, initiated a Complaint in the Land Court ("Coiley and Lane Land Court Complaint"), seeking to foreclose the Coiley and Lane Property.  The Coiley and Lane

Land Court Complaint states that EMC "is the owner (or assignee) and holder of a mortgage with the statutory power of sale" on the property.

140.    A true and correct copy of the Coiley and Lane Land Court Complaint is attached hereto and labeled Exhibit U.

141.    At the time of the Coiley and Lane Land Court Complaint, both EMC and Ablitt Law knew or should have known that EMC did not have a valid assignment of the mortgage, consistent with the statute of frauds, from Argent.

142.    An Order of Notice was issued by the Land Court on or about November 14, 2007 ("Coiley and Lane Order of Notice").  The Coiley and Lane Order of Notice reflects the representation in the Coiley and Lane Land Court Complaint that EMC is the holder of the mortgage.  Coiley and Lane were served with the Coiley and Lane Order of Notice on or about December 8, 2007.

143.    A true and correct copy of the Coiley and Lane Order of Notice is attached hereto and labeled Exhibit V.

144.    At the time of the service of the Coiley and Lane Order of Notice, both EMC and Ablitt Law knew or should have known that EMC did not have a valid assignment of the mortgage, consistent with the statute of frauds, from Argent.

145.    On July 17, 2008, July 24, 2008 and July 31, 2008, Ablitt Law, as attorney and agent for EMC, caused to be published in a publication titled The Billerica Minuteman a "Notice of Mortgagee's Sale of Real Estate" identifying EMC as the present holder of the mortgage. ("Coiley Publication Notice").

146.    A true and correct copy of the Coiley and Lane Publication Notice is attached hereto and labeled Exhibit W.  It was filed, along with EMC's foreclosure deed

26

and affidavit in the Middlesex County (Northern District) Registry of Deeds at Book No. 22539, Page No. 71.

147.    On July 11, 2008, Ablitt Law, as attorney and agent for EMC, sent correspondence labeled "Notice of Intention to Foreclose Mortgage and of Deficiency After Foreclosure of Mortgage" ("Coiley and Lane Notice of Intention"). The Coiley and Lane Notice of Intention indicates that EMC is the present holder of the mortgage, but includes no reference to an assignment.

148.    A true and correct copy of the Coiley and Lane Notice of Intention is attached hereto and labeled Exhibit X.

149.    Coiley and Lane also received a communication from Ablitt Law entitled "Notice of Mortgage Foreclosure Sale" along with a legal description of the mortgaged property ("Coiley and Lane Notice of Sale").  The Coiley and Lane Notice of Sale appears to be intended to meet the requirements of G.L. c. 244, § 14.

150.    The Coiley and Lane Notice of Sale is signed by Ablitt Law on behalf of EMC as "present holder" of the mortgage.

151.    The Coiley and Lane Notice of Sale provides a reference to the recorded mortgage by deed book and page, but includes no reference to an assignment to EMC, as provided for on the form of notice contained in the statute.

152.    A true and correct copy of the Coiley and Lane Notice of Sale is attached hereto and labeled Exhibit Y.

153.    At the time of the Coiley and Lane Publication Notice, the Coiley and Lane Notice of Intention and the Coiley and Lane Notice of Sale, both EMC and Ablitt

27

Law knew or should have known that EMC did not have a valid assignment of the mortgage, consistent with the statute of frauds, from Argent.

154.    The mortgage was not assigned to EMC by Argent until September 9, 2008, a date approximately one week before the foreclosure sale.  A written assignment ("the Coiley and Lane Assignment") was executed on that date.

155.    A true and correct copy of the Coiley and Lane Assignment is attached hereto and labeled Exhibit Z.

156.    The Coiley and Lane Property was sold at a foreclosure auction by EMC on September 15, 2008.  EMC purchased the Coiley and Lane Property at this auction.

157.    The Coiley and Lane Land Court Complaint, the Coiley and Lane Order of Notice, the Coiley and Lane Publication Notice, the Coiley and Lane Notice of Intention, and the Coiley and Lane Notice of Sale were all inaccurate when signed and misrepresented the authority of EMC to act under the mortgage.

158.    The foreclosure sale of the Coiley and Lane Property is void under Massachusetts law.

159.    On information and belief, Coiley and Lane was charged substantial attorneys' fees and costs in excess of $2000 for this invalid foreclosure action.

160.    Coiley and Lane were the subject of a Summary Process action in the Housing Court Department, Northeast Division Docket No. 0977-SP-0353, but that action was dismissed by stipulation.  Lane and Coiley remain subject to eviction at any time.

E.    **Donna Ford and Charles Tucker**

161.    Donna Ford and Tucker and Charles Tucker ("Ford and Tucker") are Massachusetts residents who formerly resided at 200 Elm Street, Everett, MA 02149 ("Ford and Tucker Property").  Donna Ford is disabled.  Charles Tucker is an eighty-eight year old veteran of World War II.

162.    On or about December 3, 2004, Ford and Tucker, entered into a mortgage loan with Union Federal Savings Bank ("Union"), on unfair and expensive subprime terms.  The complicated terms of the loan made it difficult or impossible for Ford and Tucker to understand.

163.    The mortgage associated with the loan, which expressly incorporates the statutory power of sale, was made in favor of an entity known as Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for the Union and the Union's successors and assigns.  ("Ford and Tucker Mortgage")

164.    A true and correct copy of the Ford and Tucker Mortgage is attached hereto and labeled Exhibit AA.

165.    For various reasons, Ford and Tucker fell behind on payments on the loan.

166.    Ford and Tucker did not receive notice of assignment of the mortgage by MERS or Union.

167.    In or about March 2007, Ford and Tucker began receiving correspondence from Harmon Law on behalf of U.S. Bank.  The correspondence indicated that U.S. Bank was the present holder of the Ford and Tucker Mortgage and that Ford and Tucker were in default on the corresponding loan.  Throughout their experience, Ford and Tucker had

great difficulty communicating with Harmon Law regarding the steps they had to take to cure their default.

168.    On May 3, 2007, Ford and Tucker received a notice from Harmon Law informing them that they were required to pay $27,690.36 by May 8, 2007 in order to reinstate their loan ("Ford and Tucker Reinstatement Notice"). This amount included over $4400 in legal fees and costs. The Ford and Tucker Reinstatement Notice indicated that U.S. Bank was the holder of the Ford and Tucker Mortgage.

169.    A true and correct copy of the Ford and Tucker Reinstatement Notice is attached hereto and, in addition to the Ford and Tucker Order of Notice, is labeled Exhibit BB.

170.    An Order of Notice was issued by the Land Court on or about March 14,2007 ("Ford and Tucker Order of Notice"). The Ford and Tucker Order of Notice reflects the representation that U.S. Bank is the holder of the mortgage. Ford and Tucker was served with the Ford and Tucker Order of Notice.

171.    A true and correct copy of the Ford and Tucker Order of Notice is attached hereto and, in addition to the Ford and Tucker Reinstatement Notice, is labeled Exhibit BB.

172.    At the time of the service of the Ford and Tucker Order of Notice, both U.S. Bank and Harmon Law knew or should have known that U.S. Bank did not have a valid assignment of the mortgage, consistent with the statute of frauds, from Union or MERS.

173.    On April 12, 2007, April 19, 2007 and April 26, 2007, Harmon Law, as attorney and agent for U.S. Bank, caused to be published in a publication titled Everett

Leader Herald News Gazette a "Notice of Mortgagee's Sale of Real Estate" identifying U.S. Bank as the present holder of the mortgage. ("Ford and Tucker Publication Notice").

174.    On or about April 2007, Harmon Law, as attorney and agent for U.S. Bank, sent correspondence labeled "Notice of Intention to Foreclose Mortgage and of Deficiency After Foreclosure of Mortgage" ("Ford and Tucker Notice of Intention").  On information and belief, the Ford and Tucker Notice of Intention indicated that U.S. Bank was the present holder of the mortgage, but included no reference to an assignment.

175.    On information and belief, the Ford and Tucker Notice of Intention contained a disclaimer indicating that the notice was being sent in order to collect a debt.

176.    In or about April 2007, Ford and Tucker also received a communication from Harmon Law entitled "Notice of Mortgage Foreclosure Sale" along with a legal description of the mortgaged property ("Ford and Tucker Notice of Sale.")  On information and belief, the Ford and Tucker Notice of Sale indicated that U.S. Bank was "present holder" of the mortgage.

177.    On information and belief, the Ford and Tucker Notice of Sale provided a reference to the recorded mortgage by deed book and page, but included no reference to an assignment to U.S. Bank, as provided for on the form of notice contained in the statute.

178.    At the time of the Ford and Tucker Publication Notice, the Ford and Tucker Notice of Intention and the Ford and Tucker Notice of Sale, both U.S. Bank and Harmon Law knew or should have known that U.S. Bank did not have a valid assignment of the mortgage, consistent with the statute of frauds, from Union or MERS.

179.    On May 8, 2007, Harmon Law conducted a foreclosure sale by auction pursuant to the statutory power of sale of the Ford and Tucker Property on behalf of U.S. Bank.  The outcome of the foreclosure sale is reflected in a foreclosure deed executed on September 19, 2007 and recorded in the Middlesex County Registry of Deeds (North Division) at Book 50264, Page 439 ("Ford and Tucker Foreclosure Deed").

180.    Harmon Law issued a "Certificate of Entry" on May 8, 2007, stating that U.S. Bank was the current holder of the mortgage ("Ford and Tucker Certificate of Entry").

181.    True and correct copies of the Ford and Tucker Foreclosure Deed and the Ford and Tucker Certificate of Entry are attached hereto together and labeled Exhibit CC.

182.    At the time of the sale and of the Ford and Tucker Certificate of Entry, both U.S. Bank and Harmon Law knew or should have known that U.S. Bank did not have a valid assignment of the mortgage, consistent with the statute of frauds, from Union or MERS.

183.    As of the filing of this Complaint, no assignment of the Ford and Tucker Mortgage to U.S. Bank appears in the Middlesex Registry of Deeds.

184.    The Ford and Tucker Order of Notice, the Ford and Tucker Notice of Intention, the Ford and Tucker Notice of Sale and the Ford and Tucker Certificate of Entry were all inaccurate when signed and misrepresented the authority of U.S. Bank to act under the mortgage.

185.    The foreclosure sale of the Ford and Tucker Property is void under Massachusetts law.

186.    On information and belief, Ford and Tucker was charged substantial attorneys' fees and costs in excess of $4000 for this invalid foreclosure action.

187.    In or about April 2008, Ford and Tucker vacated the Ford and Tucker Property.

**F.    Adam Kayi a/k/a Abderrahman Kayi**

188.    Adam Kayi a/k/a Abderrahman Kayi ("Kayi"), previously resided at 781 Boylston Street, Unit 3 in Brookline (the "Kayi Property"), which he purchased as his primary residence.

189.    On or about June 21, 2006, Kayi entered into a loan with Sallie Mae, on expensive and subprime terms.  The complicated terms of the loan made it difficult or impossible for Kayi to understand.

190.    The mortgage associated with the loan, which expressly incorporates the statutory power of sale, was made in favor of MERS as mortgagee and nominee for Sallie Mae ("Kayi MERS Mortgage").

191.    A true and correct copy of the Kayi MERS Mortgage is attached hereto and labeled Exhibit DD.

192.    In or about April 2007, Nicholas Barrett, an East Providence, Rhode Island based law firm acting on behalf of Sallie Mae, caused an Order of Notice to be issued by the Land Court ("Kayi Order of Notice").  The Order of Notice reflects that Sallie Mae is the holder of the mortgage.

193.    A true and correct copy of the Kayi Order of Notice is attached hereto and labeled Exhibit EE.

194.     At the time of the Order of Notice, both Sallie Mae and Barrett law knew or should have known that Sallie Mae did not have a valid assignment of the mortgage, consistent with the Statute of Frauds, from MERS.

195.     On or about June 14, 2007, June 21, 2007 and June 28, 2007, Barrett Law published a "Notice of Mortgagee's Sale of Real Estate" ("Kayi Publication Notice") in the *Brookline Tab*.  The Kayi Publication Notice appears to be intended to meet the requirements of G.L. c. 244 §14.

196.     The Kayi Publication Notice states that Sallie Mae is the "present holder" of the mortgage.

197.     The Kayi Publication Notice provides a reference to the recorded mortgage by deed, book and page but includes no reference to an assignment to Sallie Mae, as provided for on the form of notice contained in the statute.

198.     A true and correct copy of the Kayi Publication Notice is attached hereto and labeled Exhibit FF.

199.     At the time of the Kayi Publication Notice, both Sallie Mae and Nicholas Barrett law knew or should have known that Sallie Mae did not have a valid assignment of the mortgage, consistent with the Statute of Frauds, from MERS.

200.     On or about July 10, 2007, Nicholas Barrett conducted a foreclosure sale by auction, pursuant to the statutory power of sale, of the Kayi Property on behalf of Sallie Mae.  The outcome of the foreclosure sale is reflected in a Foreclosure Deed recorded in the Norfolk County Registry of Deeds in Book 25832 on Page 385 ("Kayi Foreclosure Deed").

201.    A true and correct copy of the Kayi Foreclosure Deed is attached hereto and labeled Exhibit GG.

202.    At the time of the foreclosure sale, both Sallie Mae and Nicholas Barrett knew or should have known that Sallie Mae did not have a valid assignment of the mortgage, consistent with the Statute of Frauds, from MERS.

203.    On or about June 5, 2008, a written assignment of the mortgage by MERS to Sallie Mae (the "Kayi Assignment") was executed, a date approximately 11 months after the foreclosure sale.

204.    In the Assignment, executed on June 5, 2008, MERS represents itself to be the holder of the mortgage it is assigning to Sallie Mae.  A clause on the Assignment states it is "on or before 4/4/07."

205.    A true and correct copy of the Kayi Assignment is attached hereto and labeled Exhibit HH.

206.    Each of the pleadings and the notices listed above were inaccurate when signed and misrepresented the authority of Sallie Mae to act under the mortgage.

207.    The foreclosure sale of the Kayi property is thus void under Massachusetts law.

**G.    Roberto Szumik**

208.    Roberto Szumik ("Szumik"), previously resided at 6 West Street in Natick (the "Szumik Property"), which he purchased as his primary residence.

209.    On or about September 30, 2005, Szumik entered into a loan with Credit Suisse First Boston Financial Corporation as lender on expensive and subprime terms.

The complicated terms of the loan made it difficult or impossible for Szumik to understand.

210.    The mortgage associated with the loan, which expressly incorporates the statutory power of sale, was made in favor of MERS, as mortgagee and nominee for Credit Suisse First Boston Financial Corporation ("Szumik MERS Mortgage").

211.    A true and correct copy of the Szumik MERS Mortgage is attached hereto and labeled Exhibit II.

212.    On or about August 2, 2007, Harmon Law, acting on behalf of U.S. Bank, caused an Order of Notice to be issued by the Land Court ("Szumik Order of Notice"). The Order of Notice reflects that U.S. Bank is the holder of the mortgage.

213.    A true and correct copy of the Szumik Order of Notice is attached hereto and labeled Exhibit JJ.

214.    At the time of the Szumik Order of Notice, both U.S. Bank and Harmon Law knew or should have known that U.S. Bank did not have a valid assignment of the Szumik Mortgage, consistent with the Statute of Frauds, from MERS.

215.    On or about August 31, 2007, September 7, 2007 and Sept 14, 2007, Harmon Law published a "Notice of Mortgagee's Sale of Real Estate" ("Szumik Publication Notice") in the *Boston Herald*.  The Szumik Notice of Sale appears to be intended to meet the requirements of G.L. c. 244 §14.

216.    The Szumik Publication Notice states that U.S. Bank is the "present holder" of the mortgage.

217.    The Szumik Publication Notice provides a reference to the recorded mortgage by deed, book and page but includes no reference to an assignment to U.S. Bank, as provided for on the form of notice contained in the statute.

218.    A true and correct copy of the Szumik Publication Notice is attached hereto and labeled Exhibit KK.

219.    On information and belief, Harmon Law also mailed Szumik a Notice of Intention to Foreclose and a Notice of Sale that also listed U.S. Bank as the present holder of the Szumik Mortgage.

220.    At the time of the Szumik Publication Notice, both U.S. Bank and Harmon Law knew or should have known that U.S. Bank did not have a valid assignment of the mortgage, consistent with the Statute of Frauds, from MERS.

221.    On or about September 28, 2007, Harmon Law conducted a foreclosure sale by auction, pursuant to the statutory power of sale, of the Szumik Property on behalf of U.S. Bank.

222.    On or about September 28, 2007, Harmon Law issued a "Certificate of Entry" that states that U.S. Bank is the current holder of the mortgage ("Szumik Certificate of Entry").

223.    A true and correct copy of the Szumik Certificate of Entry is attached hereto and labeled Exhibit LL.

224.    At the time of the foreclosure sale and the Szumik Certificate of Entry, both U.S. Bank and Harmon Law knew or should have known that U.S. Bank did not have a valid assignment of the mortgage, consistent with the Statute of Frauds, from MERS.

225.    On or about October 16, 2007, an Assignment of Mortgage (the " Szumik Assignment") was executed by MERS assigning the mortgage to U.S. Bank.  The Assignment was executed after the Order of Notice but states that it is effective July 6, 2007.

226.    A true and correct copy of the Szumik Assignment is attached hereto and labeled as Exhibit MM.

227.    Each of the Land Court pleadings and the notices listed above were inaccurate when signed and misrepresented the authority of U.S. Bank to act under the mortgage.

228.    As a result, the foreclosure sale of the Szumik Property is void under Massachusetts law.

**H.    Geraldo Dosanjos**

229.    Geraldo Dosanjos ("Dosanjos") previously resided at 149-151 Dover Road in Millis ("Dosanjos Property"), which he purchased as his primary residence.

230.    On or about August 23, 2005, Dosanjos entered into a loan with Credit Suisse First Boston Financial Corporation as lender on expensive and subprime terms ("Dosanjos Mortgage").  The complicated terms of the loan made it difficult or impossible for Dosanjos to understand.

231.    The mortgage associated with the loan was made in favor of MERS, as mortgagee and nominee for Credit Suisse First Boston Financial Corporation.

232.    A true and correct copy of the Dosanjos Mortgage is recorded with the Norfolk County Registry of Deeds in Book 22809 on Page 538.

233.    Harmon Law, acting on behalf of U.S. Bank, caused an Order of Notice to be issued by the Land Court on or about July 31, 2007 ("Dosanjos Order of Notice"). The Dosanjos Order of Notice reflects that U.S. Bank is the holder of the mortgage.  At the time the Order of Notice was issued by the Land Court, MERS had not executed an assignment in favor of U.S. Bank.

234.    A true and correct copy of the Dosanjos Order of Notice is recorded with the Norfolk County Registry of Deeds in Book 25072 on Page 126.

235.    At the time of the Dosanjos Order of Notice, both U.S. Bank and Harmon Law knew or should have known that U.S. Bank did not have valid assignment of the mortgage, consistent with the statue of frauds, from MERS.

236.    On or about September 5, 2007, September 12, 2007, and September 19, 2007, Harmon Law published a "Notice of Mortgagee's Sale of Real Estate" ("Dosanjos Publication Notice") in the *Milford and Tucker Daily News*.  The Dosanjos Publication Notice appears intended to meet the requirements of G.L. c. 244 § 14.

237.    The Dosanjos Publication Notice of Sale states that U.S. Bank is the "present holder" of the mortgage.

238.    The Dosanjos Publication Notice provides a reference to the recorded mortgage by deed, book and page but includes no reference to an assignment to U.S. Bank, as provided for on the form of notice contained in the statute.

239.    A true and correct copy of the Dosanjos Publication Notice is recorded with the Norfolk County Registry of Deeds, as Exhibit A of a related Foreclosure Deed, in Book 25428 on Page 593.

240.    On information and belief, Harmon Law also mailed Dosanjos a Notice of Intention to Foreclose and a Notice of Sale that also listed U.S. Bank as the present holder of the Dosanjos Mortgage.

241.    At the time of the Dosanjos Publication Notice, both U.S. Bank and Harmon Law knew or should have known that U.S. Bank did not have valid assignment of the mortgage, consistent with the statue of frauds, from MERS.

242.    On or about September 27, 2007, Harmon Law conducted a foreclosure sale by auction, pursuant to the statutory power of sale, of the Dosanjos property on behalf of U.S. Bank.

243.    On or about September 27, 2007, Harmon Law issued a "Certificate of Entry" that's states that U.S. Bank is the current holder of the mortgage ("Dosanjos Certificate of Entry").

244.    A true and correct copy of the Dosanjos Certificate of Entry is recorded with the Norfolk County Registry of Deeds in Book 25428 on Page 592.

245.    At the time and issuance of the Dosanjos Certificate of Entry, both U.S. Bank and Harmon Law knew or should have known that U.S. Bank did not have valid assignment of the mortgage, consistent with the statue of frauds, from MERS.

246.    On or about October 3, 2007, a written assignment of the mortgage by MERS to U.S. Bank ("Dosanjos Assignment") was executed.

247.    In the Dosanjos Assignment, executed on October 3, 2007, MERS represents itself to be the holder of the mortgage it is assigning to U.S. Bank. A clause in the Dosanjos Assignment states it is effective July 5, 2007.

248.    A true and correct copy of the Dosanjos Assignment is recorded with the Norfolk County Registry of Deeds in Book 25428 on Page 589.

249.    Each of the Land Court pleadings and notices listed above were inaccurate when signed and misrepresented the authority of U.S. Bank to act under the mortgage.

250.    The foreclosure sale of the Dosanjos property is thus void under Massachusetts law.

## VI.    ADDITIONAL ALLEGATIONS

### A.    FDCPA Allegations

251.    As described above, the Law Firm Defendants regularly attempt to collect debts alleged to be due another.  Harmon Law, Ablitt Law and Nicholas Barrett are therefore are debt collectors as defined by 15 U.S.C. § 1692a(6).

252.    The Named Plaintiffs and putative class members are consumers as defined by 15 U.S.C. § 1692(a)(3) because they are natural persons obligated or allegedly obligated to pay a debt.

253.    The notices sent by the Law Firm Defendants to the Named Plaintiffs and putative class members, as described in this Amended Consolidated Complaint, are communications as defined in 15 U.S.C. § 1692(a)(2).

254.    The FDCPA is a strict liability statute that is to be construed liberally so as to effectuate its remedial purpose. *See Pettway v. Harmon Law Offices, P.C.*, No. 03-CV-10932-RGS, 2005 WL 2365331 at *3 (D. Mass. Sept. 27, 2005).

### B.    Additional Factual Allegations as to Business Practices

255.    The factual circumstances described above affecting the Plaintiffs and their properties are not isolated occurrences.

256.    Failure to obtain valid written assignment prior to commencing the legal process of noticing and conducting foreclosures has become common and routine.

257.    Representations are commonly and routinely made to the Land Court that a foreclosing Plaintiff is the "assignee" of the mortgage even when no valid assignment of the mortgage exists.

258.    Representations are commonly and routinely included in notices required by statute that the party giving notice is the "assignee" of the mortgage even when no valid assignment of the mortgage exists.

259.    Parties that do not hold the statutory power of sale commonly and routinely conduct foreclosure sales.

260.    At such foreclosure sales, it is generally true that properties sell for less than their full fair market value.

261.    Law firms routinely bill for foreclosure processes that are invalid under the law.  These charges are then placed on borrowers' accounts.

262.    The conduct identified in this Amended Consolidated Complaint is willful and knowing.

263.    The problems identified in this case are more than simple technical issues. As more mortgages are securitized, sold into pools and transferred to various entities across the country, it is entirely possible, if not likely, that more than one entity asserts rights under the mortgage.  The historical legal protection to prevent these conflicts is a writing that complies with the statute of frauds.

264.    In addition to protecting homeowners and others with an interest in the property being foreclosed, compliance with the technical requirements of the law protects

future owners in the chain of title. Ultimately, compliance with the law is not onerous to the Defendants. Any burdens are far outweighed by the benefits of a clearly established written record of transfers that may affect the validity of Massachusetts' titles.

265.    At all times relevant to this Amended Consolidated Complaint, the Law Firm Defendants were agents of each Foreclosing Defendant who was its client, and in doing the acts alleged herein were acting within the course and scope of such agency. Each Law Firm Defendant had actual and/or constructive knowledge of the acts of each Foreclosing Defendant who was its client, and directed, implemented, ratified, approved, joined in, acquiesced in, and/or authorized the wrongful acts of each Foreclosing Defendant, and/or obtained benefits from said wrongful acts.

266.    In connection with the events that form the basis of this Amended Consolidated Complaint, each of the Law Firm Defendants acted with the consent of the Foreclosing Defendant who was its client.

267.    In connection with the events that form the basis of this Amended Consolidated Complaint, each of the Law Firm Defendants acted subject to the control of the Foreclosing Defendant who was its client.

268.    In connection with the events that form the basis of this Amended Consolidated Complaint, each of the Law Firm Defendants acted on behalf of the Foreclosing Defendant who was its client.

269.    Agency "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control." *Kirkpatrick v. Boston Mut. Life Ins. Co.*, 393 Mass. 640, 645 (1985) *quoting* Restatement (Second) of Agency § 1 (1958).

### C.    Aiding and Abetting

270.    The Law Firm Defendants knew that the conduct of the Named Foreclosing Defendants and the Defendant Class constituted common law and statutory breaches, as described in the Counts below.  The Law Firm Defendants intended to assist in the execution of these breaches.

271.    The Law Firm Defendants nevertheless gave substantial assistance and encouragement to the Named Foreclosing Defendants and the Defendant Class to commit these breaches.  Indeed, the breaches at issue could not have occurred but for the assistance and encouragement of the Law Firm Defendants, who were the primary actors in the conduct constituting the breaches.

272.    The Law Firm Defendants are therefore subject to liability for aiding and abetting the conduct of the Named Foreclosing Defendants and the Defendant Class.

### VII.    CLASS ACTION ALLEGATIONS

273.    Plaintiffs bring this action on behalf of themselves and a Plaintiff Class of all other persons similarly situated ("Plaintiff Class"), against the Law Firm Defendants, the Named Foreclosing Defendants and a Defendant Class of all other Defendants similarly situated to the Named Foreclosing Defendants pursuant to Fed. R. Civ. P. 23.

### A.    The Plaintiff Class

274.    The Plaintiff Class includes and is represented by the Plaintiffs and consists of all Massachusetts residents in the following two subclasses:

(SUBCLASS 1: FORECLOSED BORROWER SUBCLASS)

Individuals whose primary residence was foreclosed by power of sale in the past four years by a member of the Defendant Class that did not have actual written

assignment of the mortgage being foreclosed at the time that Notice of Sale was sent pursuant to G.L. c. 244, § 14.

(SUBCLASS 2: IMPROPER NOTICE SUBCLASS)

Individuals who have or had a foreclosure sale scheduled by a Member of the Defendant Class that did not have actual written assignment of the mortgage being foreclosed at the time that notice was executed pursuant to G.L. c. 244 § 14, and/or at the time that notice of the right to cure was sent, if required, pursuant to G.L. c. § 244, § 35A.

275.    There are questions of law and fact common to all members of the Plaintiff Class, which questions predominate over any question affecting only individual Plaintiff Class members. The principal common issues are:

a.   whether Defendants or a member of the Defendant Class acted without authority pursuant to a power of sale during the foreclosure process;

b.   For the Foreclosed Borrower Subclass:  Whether the foreclosure sales conducted are void or voidable;

c.   For the Improper Notice Subclass:  Whether pending foreclosure sales may be conducted and whether foreclosure sales that occurred without proper notice are void or voidable; and

d.   Whether Plaintiff Class members are entitled to declaratory judgment, injunctive relief or damages.

276.    The only individual questions concern the identification of members of the Plaintiff Class.  Identification can be made by review of records in possession of the

Defendant Law Firms, members of the Defendant Class (defined below) and/or from public records.

277.    Mailed notice can be provided to the Plaintiff Class by various means of communications, as identified in public records, the records of the Defendant Law Firms, the records of members of the Defendant Class (defined below) and/or in other sources. Publication notice can be provided to supplement mailed notice.

278.    Plaintiff claims are typical of the claims of Plaintiff Class members.  All are based on the same legal and remedial theories.

279.    Plaintiffs will fairly and adequately protect the interests of all Plaintiff Class members in the prosecution of this action and in the administration of all matters relating to claims stated herein. They are similarly situated with, and have suffered similar injuries as, the members of the class they seek to represent.

280.    Plaintiffs have retained counsel experienced in handling defenses to foreclosure as well as class action suits involving unfair business practices and consumer law.  Neither the Named Plaintiffs nor their counsel have any interest that might cause them not to vigorously pursue this action.

**B.    The Defendant Class**

281.    The Defendant Class includes and is represented by the Named Foreclosing Defendants and consists of all entities that within the last four years, have foreclosed, or are in the process of foreclosing, a mortgage in Massachusetts or who have sent notices required by G.L. c. 244, §14 or 35A, and who are not mortgagees or entities authorized to foreclose by the statutory power of sale because such entities have not first obtained an actual written assignment of the mortgage ("Defendant Class").

282.    There are questions of law and fact common to all members of the Defendant Class, which questions predominate over any question affecting only individual class members. The principal common issues are:

    a.   Whether members of the Defendant Class acted without authority pursuant to a power of sale in the process of foreclosing a mortgage in Massachusetts;

    b.   Whether the foreclosure sales conducted are void or voidable; and

    c.   Whether pending future foreclosure sales may be conducted.

283.    The only individual questions concern the identification of members of the Defendant Class.  Identification can be made by review of records in possession of the Defendant Law Firms and/or from public records.

284.    Notice can be provided to the Defendant Class by various means of communications, as identified in public foreclosure records, the records of the Defendant Law Firms and/or in other sources.

285.    The Named Foreclosing Defendants are typical of Defendant Class members.  All of their potential defenses are based on the same legal and equitable theories.

286.    The Named Foreclosing Defendants can fairly and adequately protect the interests of all Defendant Class members in the defense of this action and in the administration of all matters relating to claims stated herein. They are similarly situated with, and have similar defenses to the members of the Defendant Class. They can be expected to retain counsel to vigorously defend this action.

C.     **Other Class Action Issues**

287.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, in that:

  a.   the losses suffered by the Plaintiff Class members are such that prosecution of individual actions is impractical or economically unfeasible;

  b.   the form of proof required is such that prosecution of individual actions is impractical or economically infeasible;

  c.   in the absence of the class action device, Plaintiffs and Plaintiff Class Members would be left without a remedy for the wrongful acts alleged, and the Defendants would be unjustly enriched;

  d.   the prosecution of separate lawsuits by individual members of the Plaintiff Class would create the risk of inconsistent adjudications with respect to individual class members, which would establish incompatible standards of conduct for the named Defendants and the Defendant Class, making concentration of the litigation concerning this matter in this Court desirable;

  e.   the claims of the representative Plaintiffs are typical of the claims of the Plaintiff Class; and

  f.   no unusual difficulties are likely to be encountered in the management of this action as a class action.

288.     Both the Plaintiff Class and the Defendant Class are so numerous as to make it impracticable to join all members in this action. Based upon the investigation of

counsel, the number of members of the Plaintiff Class is estimated to be in excess of

1000 persons.  The number of members of the Defendant Class is estimated to be in

excess of 100 entities.

### COUNT I: BY THE FORECLOSED BORROWER SUBCLASS AGAINST THE LAW FIRM DEFENDANTS AND THE DEFENDANT CLASS
### (Wrongful Foreclosure - Violation of Statute: G.L. c. 244 § 14. G.L. c. 183, § 21 – Sale Void Pursuant to Statute and Common Law)

289.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully

herein.

290.    Ms. Manson, Mr. and Mrs. Nicholas, Ms. Ford and Mr. Tucker, Mr. Kayi,

Mr. Szumik, and Mr. Dosanjos are representatives of the subclass for the purposes of this

claim.

291.    The Named Foreclosing Defendants are representatives of the Defendant

Class for the purposes of this claim.

292.    Throughout the four years prior to the commencement of this action, the

Named Foreclosing Defendants and the Defendant Class routinely exercised the statutory

power of sale contained in G.L. c. 183, § 21, under procedures required by G.L. c. 244 §

14.

293.    Under the statute of frauds, G.L. c. 259 § 1, in order to act as an assignee,

the Named Foreclosing Defendants and the Defendant Class are required to possess such

assignment in writing.

294.    The Named Foreclosing Defendants and the Defendant Class, acting by

and through the Law Firm Defendants and others, routinely exercised the power of sale,

without the requisite legal authority, pursuant to a valid written assignment that meets the

statute of frauds.

295.    The resulting foreclosure sales were wrongful, without legal effect, and are void.

296.    The Named Foreclosing Defendants and the Defendant Class, acting by and through the Foreclosing Law firms and others, routinely sent or published statutorily mandated notices pursuant to G.L. c. 244, §§ 14 and 35A asserting authority to foreclose by assignments that did not then exist.

297.    Said notices do not meet the statutory requirements and are void and without legal effect.  Foreclosures conducted based on improper mailed or published legal notices are wrongful, void, and without legal affect.

298.    The Named Foreclosing Defendants and the Defendant Class, acting by and through the Foreclosing Law firms and others, routinely represented to the Land Court authority to exercise powers of sale based on assignments that did not exist at the time of the representation.  The misrepresentations result in void or voidable judgments of the Land Court.

299.    Absent valid written assignment prior to notice required by G.L. c. 244, § 35A and/or G.L. c. 244, § 14, foreclosure sale are wrongful and improper under Massachusetts law.

300.    The foreclosure sales conducted by such entities are also void or voidable as against public policy.

301.    The Foreclosed Borrower Subclass suffered damages as a result of the conduct of the Named Foreclosure Defendants and all others similarly situated.

302.     The Foreclosed Borrower Subclass is entitled to a declaratory judgment determining that the foreclosure sales of their properties is void and setting aside those sales.

**COUNT II: BY THE IMPROPER NOTICE SUBCLASS AGAINST THE LAW FIRM DEFENDANTS AND THE DEFENDANT CLASS**
**(Violation of Statute: G.L. c. 244 § 14, Notice Void Under Statute and Common Law)**

303.     Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

304.     Mr. DePina and Ms. Coiley and Mr. Lane are representatives of the subclass for the purposes of this claim.

305.     The Named Foreclosing Defendants are representatives of the Defendant Class for the purposes of this claim.

306.     Throughout the four years prior to the commencement of this action, the Named Foreclosing Defendants and the Defendant Class routinely sent or published statutorily required notices necessary to exercise the power of sale contained in G.L. c. 183, § 21, under procedures mandated by G.L. c. 244 § 14.

307.     Under the statute of frauds, G.L. c. 259 § 1, in order to act as an assignee, the Named Foreclosing Defendants and the Defendant Class are required to possess such assignment in writing.

308.     The Named Foreclosing Defendants and the Defendant Class, acting by and through the Law Firm Defendants and others, routinely send or publish statutorily mandated notices pursuant to G.L. c. 244, §§ 14 and 35A asserting authority to foreclose by assignments that did not then exist.

309.     Said notices do not meet the statutory requirements and are void and without legal effect.  Foreclosure sales are routinely scheduled without proper mailed and published legal notices. If conducted, such sales would be void, improper and without legal effect.

310.     The Named Foreclosing Defendants and the Defendant Class, acting by and through the Law Firm Defendants and others, routinely represented to the Land Court authority to exercise powers of sale based on assignments that did not exist at the time of the representation.  The misrepresentations result in void or voidable judgments of the Land Court.

311.      The Improper Notice Subclass is entitled to a declaratory judgment that the notices of sale they have received are without legal effect and cannot meet statutory requirements for a valid foreclosure sale.

312.     The Improper Notice Subclass is entitled to an injunction preventing foreclosure sale of their properties until such time as proper notice is made pursuant to the statute.

313.     The Improper Notice Subclass suffered damages as a result of the conduct of the Named Foreclosure Defendants and all others similarly situated.

### COUNT III: BY THE PLAINTIFF CLASS (BOTH SUBCLASSES) AGAINST THE LAW FIRM DEFENDANTS AND THE DEFENDANT CLASS
#### (Breach of duty of good faith and reasonable diligence)

314.     Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

315.     All of the individual Plaintiffs named in this action are representatives of the Plaintiff Class for the purposes of this claim.

316.    The Named Foreclosing Defendants are representatives of the Defendant Class for the purposes of this claim.

317.    As the entities responsible for exercising the statutory power of sale, the Named Foreclosing Defendants and the Defendant Class owed the Plaintiffs and the Members of the Plaintiff Class a duty of good faith and reasonable diligence in the conduct of the foreclosure proceedings.

318.    By conducting foreclosure proceedings without assignment of the relevant mortgage, the Named Foreclosure Defendants violated this duty.

319.    The Law Firm Defendants were aware of, participated, aided and abetted in the wrongful conduct described herein, both as agent and on their own behalf.  The Law Firm Defendants received substantial fees and profits for acting for members of the Defendant Class on foreclosures.  These fees and charges, for foreclosures that did not meet statutory requirements, were ultimately placed, with the Law Firms Defendants' knowledge and acquiescence, as charges on the accounts of members of the Plaintiff Class.

320.    Members of the Plaintiff Class were damaged by these breaches of duty including without limitation, by loss of equity, by lost opportunities to work out their mortgage delinquencies, by early loss of shelter, and by imposition of inappropriate foreclosure fees and costs on their accounts.

321.    The Foreclosed Borrower Subclass is entitled to a declaratory judgment determining that the foreclosure sales of their properties is void and setting aside those sales.

322.     The Foreclosed Borrower Subclass is entitled to an injunction requiring that the Named Foreclosure Defendants and all others similarly situated take all steps necessary to restore the legal title to the property to the same condition as if no foreclosure sale had ever occurred.

323.     The Improper Notice Subclass is entitled to an injunction preventing foreclosure sale of their properties until such time as proper notice is made pursuant to the statute.

324.     The Plaintiff Class is entitled to cancellation of costs and fees assessed to them for wrongful foreclosures, together with additional damages.

## COUNT IV:  BY THE PLAINTIFF CLASS (BOTH SUBCLASSES) AGAINST THE LAW FIRM DEFENDANTS (Violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*)

325.     Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

326.     All of the individual Plaintiffs named in this action are representatives of the Plaintiff Class for the purposes of this claim.

327.     By sending the notices described in this Amended Consolidated Complaint, the Law Firm Defendants violated the FDCPA.

328.     By sending communications on behalf of an entity that was not the proper holder of an assignment at that time, the Law Firm Defendants violated 15 U.S.C. § 1692(f), which prohibits debt collectors from using unfair or unconscionable means to attempt to collect a debt.  Included among the violations of that section are instances in which the debt collector takes or threatens to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the

54

property claimed as collateral through an enforceable security interest. 15 U.S.C. § 1692(f)(6)(A).

329.    By sending communications on behalf of an entity that was not the proper holder of a mortgage assignment at that time, the Law Firm Defendants violated 15 U.S.C. § 1692(e)(2), which prohibits debt collectors from using any false, deceptive or misleading representation or means in connection with the collection of any debt.

330.    By sending communications on behalf of an entity that was not the proper holder of an assignment at that time, the Law Firm Defendants violated 15 U.S.C. § 1692(g), which requires a debt collector to disclose, either in the initial communication or in a notice within five days of the initial communication, the correct name of the creditor to whom the debt is owed.

331.    The individual Plaintiffs and the putative class they represent are therefore entitled to relief available under FDCPA, 15 U.S.C. § 1692(k).

**COUNT V:  BY THE PLAINTIFF CLASS (BOTH SUBCLASSES)
AGAINST GMAC, U.S. BANK, ABLITT LAW AND HARMON LAW
("93A Defendants")
(Mass. G.L. c. 93A)**

332.    Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

333.    All of the individual Plaintiffs named in this action are representatives of the Plaintiff Class for the purposes of this claim.

334.    The 93A Defendants have violated G.L. c. 93A § 2 with respect to the Plaintiff class by utilizing practices that were unfair and/or deceptive.  The illegal practices include, without limitation:

    a.  The commencement and/or execution of foreclosure proceedings without statutory authorization, in violation of G.L. c. 244 § 14;

    b.  The breach of the duty of good faith and reasonable diligence in conducting foreclosure proceedings; and

    c.  Knowing and willful failure to otherwise follow lawful procedures in conducting foreclosures in Massachusetts.

335.    As a result of these unfair and/or deceptive practices, the 93A Defendants knowingly conducted unlawful foreclosures, profited by collection of related charges and fees and minimized the opportunities and time for class members to avoid foreclosure, resulting in lost equity, emotional distress and unnecessary foreclosure.

336.    The Plaintiff class was damaged and continue to be damaged by the practices described herein in that they have either been subject to unlawful foreclosure and loss of home equity and/or they were prevented from seeking alternative means of addressing their delinquency and/or they have been wrongfully subjected to fees and costs attendant to the foreclosure process.

337.    Pursuant to G.L. c. 93A § 9, written demands for relief have been sent to the 93A Defendants reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered.

### COUNT VI: BY DARLENE MANSON AGAINST DEFENDANTS HARMON LAW AND GMAC ("MANSON DEFENDANTS"), INDIVIDUALLY
#### (Claim for Injunctive Relief: Wrongful Foreclosure – Breach of Statute and Breach of Duty)

338.    Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

339.    The Manson Defendants owed Ms. Manson a duty of good faith and/or reasonable diligence in the commencement and conduct of foreclosure proceedings.

340.    The foreclosure sale of Ms. Manson's home was executed by the Manson Defendants in violation of their duty of good faith.

341.    By commencing, noticing, conducting and executing a foreclosure by power of sale at a time when GMAC did not actually hold a written assignment of the mortgage, and by misrepresenting GMAC's status to the Land Court, the Manson Defendants did not exercise good faith and/or reasonable diligence, and violated G.L. c. 183, § 21, and G.L. c. 244, § 14.

342.    Ms. Manson is entitled to an injunction to stay her pending eviction, now scheduled for November 25, 2008, pending a determination of the outcome of these proceedings including, without limitation, a determination of the validity of the foreclosure sale of her property.

343.    Ms. Manson is also entitled to relief as a member of the Plaintiff Class and Foreclosed Borrower Subclass on the claims as aforesaid.

### COUNT VII: BY DEBORAH AND KEITH NICHOLAS AGAINST DEFENDANTS ABLITT LAW AND AVELO ("NICHOLAS DEFENDANTS"), INDIVIDUALLY
### (Claim for Injunctive Relief: Wrongful Foreclosure – Breach of Statute and Breach of Duty)

344.    Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

345.    The Nicholas Defendants owed Mr. and Mrs. Nicholas a duty of good faith and/or reasonable diligence in the commencement and conduct of foreclosure proceedings.

346.    The foreclosure sale of Mr. and Mrs. Nicholas's home was executed by the Nicholas Defendants in violation of their duty of good faith.

347.    By commencing, noticing, conducting and executing a foreclosure by power of sale at a time when Avelo did not actually hold a written assignment of the mortgage, and by misrepresenting Avelo's status to the Land Court, the Avelo Defendants did not exercise good faith and/or reasonable diligence, and violated G.L. c. 183, § 21, and G.L. c. 244, § 14.

348.    Mr. and Mrs. Nicholas are entitled to an injunction to stay their imminent eviction, pending a determination of the outcome of these proceedings including, without limitation, a determination of the validity of the foreclosure sale of their property.

349.    Mr. and Mrs. Nicholas are also entitled to relief as members of the Plaintiff Class and Foreclosed Borrower Subclass on the claims as aforesaid.

### COUNT VIII: BY GERMANO DEPINA AGAINST DEFENDANTS HARMON LAW AND U.S. BANK ("DEPINA DEFENDANTS"), INDIVIDUALLY
### (Claim for Injunctive Relief: Breach of Statute and Breach of Duty)

350.    Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

351.    As the entities responsible for exercising the statutory power of sale, the DePina Defendants owed Mr. DePina a duty of good faith and/or reasonable diligence in the commencement and conduct of foreclosure proceedings.

352.    The foreclosure sale of Mr. DePina's home was commenced and noticed by the DePina Defendants without the requisite good faith.

353.    By commencing and sending notice of the foreclosure process at a time when U.S. Bank did not actually hold a written assignment of the mortgage, and by misrepresenting U.S. Bank's status to the Land Court, the DePina Defendants did not

exercise good faith and/or reasonable diligence, and violated G.L. c. 183, § 21, and G.L. c. 244, § 14.

354.    Due to the conduct of the DePina Defendants, Mr. DePina is entitled to an injunction preventing the foreclosure sale of his home from proceeding, pending a determination of the outcome of this matter including, without limitation, a determination of the validity of the legal notices of sale sent to Mr. DePina concerning foreclosure of his property.

355.    Mr. DePina is also entitled to relief as a member of the Plaintiff Class and Improper Notice Subclass on the claims as aforesaid.

## COUNT IX: BY COILEY AND LANE AGAINST DEFENDANTS ABLITT LAW AND EMC ("COILEY AND LANE DEFENDANTS"), INDIVIDUALLY
### (Claim for Injunctive Relief: Wrongful Foreclosure, Breach of Statute and Breach of Duty)

356.    Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

357.    As the entities responsible for exercising the statutory power of sale, the Coiley and Lane Defendants owed Coiley and Lane a duty of good faith and/or reasonable diligence in the commencement and conduct of foreclosure proceedings.

358.    The foreclosure sale of the Coiley and Lane home was commenced and noticed by the Coiley and Lane Defendants without the requisite good faith.

359.    By commencing and sending notice of the foreclosure process at a time when EMC did not actually hold a written assignment of the mortgage, and by misrepresenting EMC's status to the Land Court, the Coiley and Lane Defendants did not

exercise good faith and/or reasonable diligence, and violated G.L. c. 183, § 21, and G.L. c. 244, § 14.

360.    Due to the conduct of the Coiley and Lane Defendants, Coiley and Lane are entitled to an injunction preventing their eviction from their home, pending a determination of the outcome of this matter including, without limitation, a determination of the validity of the legal notices of sale sent concerning foreclosure of their property.

361.    Coiley and Lane are also entitled to relief as a member of the Plaintiff Class and Improper Notice Subclass on the claims as aforesaid.

### COUNT X: BY FORD AND TUCKER AGAINST DEFENDANTS HARMON LAW AND U.S. BANK ("FORD AND TUCKER DEFENDANTS"), INDIVIDUALLY
#### (Claim for Injunctive Relief: Wrongful Foreclosure – Breach of Statute and Breach of Duty)

362.    Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

363.    The Ford and Tucker Defendants owed Ford and Tucker a duty of good faith and/or reasonable diligence in the commencement and conduct of foreclosure proceedings.

364.    The foreclosure sale of the Ford and Tucker home was executed by the Ford and Tucker Defendants in violation of their duty of good faith.

365.    By commencing, noticing, conducting and executing a foreclosure by power of sale at a time when U.S. Bank did not actually hold a written assignment of the mortgage, and by misrepresenting U.S. Bank's status to the Land Court, the Ford and Tucker Defendants did not exercise good faith and/or reasonable diligence, and violated G.L. c. 183, § 21, and G.L. c. 244, § 14.

60

366.    Ford and Tucker are also entitled to relief as a member of the Plaintiff

Class and Foreclosed Borrower Subclass on the claims as aforesaid.

### COUNT XI: BY KAYI AGAINST DEFENDANTS NICHOLAS BARRETT AND SALLIE MAE ("KAYI DEFENDANTS"), INDIVIDUALLY
### (Claim for Injunctive Relief: Wrongful Foreclosure – Breach of Statute and Breach of Duty)

367.    Plaintiffs repeat and reallege all paragraphs above as if fully set forth

herein.

368.    The Kayi Defendants owed Kayi a duty of good faith and/or reasonable

diligence in the commencement and conduct of foreclosure proceedings.

369.    The foreclosure sale of Kayi's home was executed by the Kayi Defendants

in violation of their duty of good faith.

370.    By commencing, noticing, conducting and executing a foreclosure by

power of sale at a time when Sallie Mae did not actually hold a written assignment of the

mortgage, and by misrepresenting Sallie Mae's status to the Land Court, the Kayi

Defendants did not exercise good faith and/or reasonable diligence, and violated G.L. c.

183, § 21, and G.L. c. 244, § 14.

371.    Kayi is also entitled to relief as a member of the Plaintiff Class and

Foreclosed Borrower Subclass on the claims as aforesaid.

### COUNT XII: BY SZUMIK AGAINST DEFENDANTS HARMON LAW AND U.S. BANK ("SZUMIK DEFENDANTS"), INDIVIDUALLY
### (Claim for Injunctive Relief: Wrongful Foreclosure – Breach of Statute and Breach of Duty)

372.    Plaintiffs repeat and reallege all paragraphs above as if fully set forth

herein.

373.    The Szumik Defendants owed Szumik a duty of good faith and/or reasonable diligence in the commencement and conduct of foreclosure proceedings.

374.    The foreclosure sale of Szumik's home was executed by the Szumik Defendants in violation of their duty of good faith.

375.    By commencing, noticing, conducting and executing a foreclosure by power of sale at a time when U.S. Bank did not actually hold a written assignment of the mortgage, and by misrepresenting U.S. Bank's status to the Land Court, the Szumik Defendants did not exercise good faith and/or reasonable diligence, and violated G.L. c. 183, § 21, and G.L. c. 244, § 14.

376.    Szumik is also entitled to relief as a member of the Plaintiff Class and Foreclosed Borrower Subclass on the claims as aforesaid.

**COUNT XIII: BY DOSANJOS AGAINST DEFENDANTS HARMON LAW AND U.S. BANK ("DOSANJOS DEFENDANTS"), INDIVIDUALLY**
**(Claim for Injunctive Relief: Wrongful Foreclosure – Breach of Statute and Breach of Duty)**

377.    Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

378.    The Dosanjos Defendants owed Dosanjos a duty of good faith and/or reasonable diligence in the commencement and conduct of foreclosure proceedings.

379.    The foreclosure sale of Dosanjos's home was executed by the Dosanjos Defendants in violation of their duty of good faith.

380.    By commencing, noticing, conducting and executing a foreclosure by power of sale at a time when U.S. Bank did not actually hold a written assignment of the mortgage, and by misrepresenting U.S. Bank's status to the Land Court, the Dosanjos

Defendants did not exercise good faith and/or reasonable diligence, and violated G.L. c.
183, § 21, and G.L. c. 244, § 14.

381.    Dosanjos is also entitled to relief as a member of the Plaintiff Class and
Foreclosed Borrower Subclass on the claims as aforesaid.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this honorable Court:

a.) assume jurisdiction over this matter;

b.) certify this case as a Plaintiff class action and appoint Named Plaintiffs to
be Plaintiff Class and Subclass representatives and their counsel to be
class counsel;

c.) certify this case as a Defendant class action and appoint Named
Foreclosing Defendants as class representatives for the Defendant Class
and their counsel to be class counsel;

d.) as to the Foreclosed Borrower Subclass, issue declaratory and/or
injunctive relief setting aside the foreclosure sales of their homes as void
or voidable and in violation of statute and public policy;

e.) as to the Improper Notice Subclass, issue declaratory and/or injunctive
relief preventing foreclosure sales of Class Members' property pending
proper notices of sale and/or setting aside completed foreclosure sales of
their homes as void or voidable and in violation of statute and public
policy;

f.) as to the Plaintiff Class issue an injunction and/or declaratory relief to
prevent further improper foreclosure related proceedings;

g.) as to the Plaintiff Class issue an injunction preventing assessment or
collection of attorneys' fees and charges for improper foreclosure

proceedings, together with an order of restitution or disgorgement with respect to such fees and charges already paid;

h.) award damages, attorney's fees and costs to the Plaintiffs and the Plaintiff Class on each claim set forth above;

i.) with regard to 93A Defendants: (1) an award of actual and/or statutory minimum damages pursuant to Mass. G.L. c. 93A § 9(3); an award of multiple damages pursuant to Mass. G.L. c. 93A § 9(3); declaratory and injunctive relief pursuant to pursuant to Mass. G.L. c. 93A § 9(3); attorneys' fees and costs pursuant to Mass. G.L. c. 93A § 9(3); and such other and further relief as is appropriate;

j.) as to Darlene Manson, issue a temporary and/or permanent injunction of the eviction proceedings pending against her;

k.) as to Deborah and Keith Nicholas, issue a temporary and/or permanent injunction of the eviction proceedings pending against them;

l.) as to Germano DePina, issue a temporary and/or permanent injunction of the foreclosure proceeding and foreclosure sale now pending;

m.) as to Coiley and Lane, issue a temporary and/or permanent injunction of the eviction proceedings pending against them;

n.) award such other relief as the Court deems necessary in equity and the interests of justice.

Respectfully Submitted,

Darlene Manson, Deborah and Keith Nicholas, Germano DePina, Robert Lane and Ann Coiley, Donna Ford and Charles Tucker, Adam Kayi, Robert Szumik, Geraldo Dosanjos, on behalf of all others similarly situated,

64

By their attorneys,

/s/ Gary Klein
Gary Klein, BBO No. 560769
Shennan Kavanagh, BBO No. 655174
Kevin Costello, BBO No. 669100
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd floor
Boston, MA  02111
Tel. 617-357-5500
Fax 617-357-5030

John R. Bryden, BBO No. 062240
John R. Bryden Attorney At Law
One Elm Square, Suite 300
Andover, MA  01810
Tel. 978-470-3650
Fax 978-470-3662
[for Darlene Manson]

Hal Levitte BBO No. 67379
Levitte Law Offices
45 School St., 2nd Floor
Boston, MA 04108
Tel: 617-227-1792
[for Adam Kayi, Robert Szumik, Geraldo Dosanjos]

Peter A. Lagorio BBO No. 567379
Lynda Carey Paris BBO No. 651108
Law Office of Peter A. Lagorio
63 Atlantic Avenue
Boston, MA 02110
Tel: 617-367-4200
Fax: 617-227-3384
[for Adam Kayi, Robert Szumik, Geraldo Dosanjos]

Dated: September 1, 2009

**<u>CERTIFICATE OF SERVICE</u>**

      I, Gary Klein, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to the non-registered participants by first class mail, postage prepaid, on September 1, 2009.

                    /s/ Gary Klein            
                    Gary Klein