UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-12166-RGS

DARLENE MANSON, et al

v.

GMAC MORTGAGE, LLC, et al

ORDER ON MOTION TO STAY

July 28, 2010

STEARNS, D. J.

This putative class-action was brought by Massachusetts homeowners whose properties have been foreclosed or who are subject to imminent or eventual eviction. Plaintiffs seek the "injunction of various foreclosure and eviction proceedings . . . based on the defendants' routine failure to comply with [State] statutory prerequisites to foreclosure," as well as a determination of the validity of foreclosures that have already occurred. Consol. Am. Class Action Compl. ¶ 1. The crux of plaintiffs' allegations is that the defendant mortgage companies, banks, and law firms have, in repeated instances, violated Massachusetts statutory requirements by foreclosing on properties (or aiding foreclosure) without first obtaining an assignment of the mortgages and a power of sale. See id. ¶ 4.[1]

On May 5, 2010, defendant Ablitt Law Offices, P.C., filed a motion to stay this matter pending the outcome of a case pending before the Massachusetts Supreme Judicial Court

---

[1] Plaintiffs assert claims of wrongful foreclosure (Count I), improper notice (Count II); breach of the duty of good faith and reasonable diligence (Count III); violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. (Count IV); and violations of Mass. Gen. Laws ch. 93A (Count V). The named plaintiffs additionally bring specific individual claims of wrongful foreclosure and breach of the duty of good faith and reasonable diligence (Counts VI through XIII).

(SJC), U.S. Bank Nat'l Ass'n v. Ibanez, SJC-10694.[2]  The SJC, in its request for *amicus* briefs in Ibanez, phrased the primary issue on appeal as

> whether a Land Court judge correctly entered judgment against the [foreclosing entities] on the ground that G.L. 244, § 14[] authorizes a foreclosure only by the holder of the mortgage, where the record established that the [foreclosing entities] did not become the holder of the mortgage until . . . after the foreclosure sale.

Ablitt's Ex. 2.[3]

Ablitt argues for a stay based on the abstention doctrine articulated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  As defendants note, the Ibanez decision has the potential of impacting thousands of past and future foreclosures in Massachusetts, including those at issue here.

The Supreme Court in Colorado River established a narrow basis for district courts to stay or dismiss federal lawsuits in deference to parallel state proceedings under "exceptional" circumstances.  See 424 U.S. at 818.  A federal court may decline jurisdiction based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15 (1983), quoting Colorado River, 424 U.S. at 817, quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952).[4]

---

[2] Co-defendants Harmon Law Offices, GMAC Mortgage, LLC, U.S. Bank National Association; and EMC Mortgage Corp. have all joined in Ablitt's motion to stay.

[3] The identical issue forms the basis of the claims asserted in the Consolidated Amended Class Action Complaint.

[4] The Court in Colorado River mentioned six illustrative factors for determining whether "exceptional circumstances" exist:  (1) whether either court has assumed jurisdiction over a res:  (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the forums obtained jurisdiction.

In Colorado River, the Supreme Court emphasized that the stay or dismissal power should be used sparingly. The Court spoke of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," 424 U.S. at 817, and cautioned that "[o]nly the clearest of justifications will warrant dismissal." Id. at 819. "The decision whether to surrender jurisdiction is necessarily left to the discretion of the district court in the first instance, and the district court's decision may be reversed only for an abuse of that discretion. Such discretion must be exercised, however, within the constraints of the 'exceptional-circumstances test." Elmendorf Grafica, Inc. v. D.S. America (East), Inc., 48 F.3d 46, 50 (1st Cir. 1995) (internal citations and quotation marks omitted) (court failed to consider that the parallel state action was not "strongly underway" and might evaporate altogether on appeal).

There is a narrower doctrine of abstention which more appropriately fits this case. See Burford v. Sun Oil Co., 319 U.S. 315, 333-334 (1943) (counseling lower federal courts to abstain where a case involves difficult and complex questions of state law the resolution of which by a federal court might impede the orderly administration of a state regulatory system).[5]

---

See 424 U.S. at 818. In Moses H. Cone, the Court added two additional factors: (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights. Another factor, mentioned but not applied in Moses H. Cone, 460 U.S. at 17 n.20, and counted by some courts, is the vexatious or reactive nature of the federal lawsuit, see, e.g., Fuller Co. v. Ramon I. Gil, Inc., 782 F.2d 306, 308-310 (1st Cir. 1986). The fourth prong (priority) is measured not by priority of filing, but rather in terms of the progress in each of the two filings. See Currie v. Group Ins. Comm'n, 290 F.3d 1, 10 (1st Cir. 2002) (comprehensive discussion of the six prongs).

[5]The doctrine does not apply where no such threat exists. Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n, 853 F.2d 1007, 1013 (1st Cir. 1988); F.D.I.C. v. Sweeney, 136 F.3d 216, 218-219 (1st Cir. 1998).

> The court has explained that Burford "derives from the discretion historically enjoyed by courts of equity" and that "exercise of this discretion must reflect principles of federalism and comity." The court has observed that its cases "do not provide a formulaic test for determining when dismissal under Burford is appropriate." "Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the independence of state action, that the State's interests are paramount and that a dispute would best be adjudicated in a state forum." . . .
>
> Although the Burford doctrine is most commonly invoked in cases involving complex state administrative schemes, the court made plain in New Orleans Public Service, Inc. v. Council of City of New Orleans (NOPSI) [491 U.S. 350 (1989)] that the purpose of the doctrine is to safeguard the integrity of state law, not simply to protect a delicate state administrative system from disruption.

Laurence H. Tribe, American Constitutional Law §3-29, at 583 (3d ed. 2000) (footnotes omitted).

The court notes plaintiffs' objections to a stay. First, plaintiffs argue that Ablitt's "zeal to avoid or defer its discovery obligations is based on mere speculation that the SJC's ruling will render Plaintiffs' claims moot." Opp'n at 1-2. Plaintiffs state that the SJC's ruling ultimately may not have a dispositive effect on this litigation, as there is the potential that the SJC will base its ruling on narrow factual grounds or may rule in favor of the plaintiffs' position. Plaintiffs lament the possibility of "losing several months' time." Id. at 2.[6]

While plaintiffs are correct that there is no guarantee that the SJC's decision will be dispositive of the claims in this litigation, the probability that it will is very high. The court is willing to risk the delay of several months in light of the time and resources that will likely be saved by having the benefit of the SJC's decision in Ibanez. Moreover, by deferring to

---

[6]According to plaintiffs, the SJC has scheduled oral argument in Ibanez for October 7, 2010. See Opp'n at 1 n.2.

4

the SJC's decision, the court avoids the danger warned against in Burford of a federal ruling that intrudes into a delicate matter of state law.  This case does not involve the circumstance that Professor Tribe cites as counseling against a stay or a dismissal where a federal court faces not a matter of difficult interpretation of *state* law but only an application of *federal* law to a state regulatory or statutory scheme.[7]

## ORDER

For the foregoing reasons, Ablitt's motion to stay is ALLOWED.  Defendants shall, within twenty-one (21) days of the SJC's ruling in Ibanez, file a submission discussing the impact (if any) of the SJC's ruling on the claims asserted in this litigation.  Plaintiffs shall have twenty-one (21) days thereafter to respond.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[7]Plaintiffs additionally argue that if they are denied prompt discovery, their rights will "further erode" because they face the risk that their properties will be re-foreclosed and sold to third-parties.  Opp'n at 6.  While the court notes that the home belonging to plaintiffs Donna Ford and Charles Tucker was re-foreclosed in December of 2009, and eventually sold to a third-party, see Docket # 158, the prospect of future re-foreclosures before the SJC rules in Ibanez, while a concern, does not outweigh the considerations of judicial efficiency that weigh in favor of a stay.