IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DARLENE MANSON, GERMANO DEPINA ROBERT LANE and ANN COILEY and ROBERTO SZUMIK and GERALDO DOSANJOS, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | Nos. 08-CV-12166-RGS 09-CV-10168 RGS |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GMAC MORTGAGE, LLC, AVELO MORTGAGE, LLC, and U.S. BANK NATIONAL ASSOCIATION, as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates 2006-EQ, as Trustee for Credit Suisse First Boston 2005-9, and as Trustee for Credit Suisse First Boston 2005-10, EMC MORTGAGE CORPORATION, on behalf of themselves and as representatives for all others similarly situated, and HARMON LAW OFFICES, P.C., ABLITT LAW OFFICES, P.C, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO LIFT STAY IMMEDIATELY
WITH POINTS AND AUTHORITIES**

Plaintiffs Darlene Manson, Germano DePina, Robert Lane, Ann Coiley, Geraldo Dosanjos and Roberto Szumik, on behalf of themselves and all others similarly situated ("Plaintiffs") hereby move the Court to lift the stay it imposed on July 28, 2010 [Docket No. 185]. On Friday, January 7, 2011, the Massachusetts Supreme Judicial Court ("SJC") issued its ruling in *U.S. Bank Nat'l Ass'n v. Ibanez*, SJC-10694, 2011 WL 38071 (Jan. 7, 2011) ("*Ibanez*"), attached hereto as Exhibit 1. Plaintiffs recognize that the July 28, 2010 Order allowed for a twenty-eight day briefing schedule following the SJC's

ruling. Given the unequivocal nature of the SJC's ruling and the pressing time concerns present in this case, Plaintiffs urge the Court to lift the stay now and allow discovery to proceed immediately.

In support of this motion, Plaintiffs offer the following points and authorities.

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

**I.    INTRODUCTION**

Plaintiffs bring this putative class action against two law firms and a defendant class of entities on whose behalf foreclosures were conducted in the Commonwealth. In each of the subject foreclosures, the law firms acted pursuant to a title standard sanctioning a now discredited "foreclose first, assign later" practice. The title standard ignored both longstanding Massachusetts common law regarding assignment of mortgages and the statute limiting execution of the power of sale to "mortgagees" and their assigns, *inter alia*. *See* G.L. c. 144, § 14. This practice was created and sanctioned by the mortgage industry and their attorneys because it was convenient and reduced their overall administrative burden. It was also illegal.

The Plaintiffs challenge particular foreclosures commenced or executed before the date on which the foreclosing entity received assignment of the subject mortgage. Under this practice, the actual assignment of the mortgage was not executed until sometime after the foreclosure sale was completed, although it was often backdated to display an earlier "effective date." In other words, the entity in whose name the foreclosure was being prosecuted had not yet become entitled to do so under Massachusetts law governing transfer of property. Under Defendants' theories, this practice was an acceptable reality occasioned by the massive numbers of loans being

processed through securitization machinery – the industry that purchased, bundled, divided and resold these loans as mortgage-backed securities.

Considering an action to clear title brought by the bank trustees themselves, however, the Land Court rejected this practice in a lengthy opinion in March 2009, and again in an October 2009 opinion. *Manson* was stayed while the SJC heard the appeal. The SJC has now affirmed the Land Court and issued a sweeping rejection of the mortgage industry's theories, so it is now appropriate for this case to proceed without further delay.

II. **THE SJC'S RULING UNEQUIVOCALLY ENDORSES PLAINTIFFS' THEORY OF THE CASE**

In *Ibanez,* the SJC reaffirmed longstanding principles of Massachusetts property law to hold that the foreclosures at issue were void for want of an actual assignment being held by the foreclosing entity. Taking note of the bank trustees' failure to abide by those longstanding principles "in the rush to sell mortgage backed securities," *see Ibanez,* 2011 WL 38071 at *12, and surprised at the "utter carelessness," *see id.,* 2011 WL 38071 at *12 (Cordy, J. concurring), with which the bank trustees documented their securitization processes, the SJC unanimously condemned the legal theories that support Defendants here.

*Ibanez* was an action brought in the Land Court by one of the named defendants here – U.S. Bank as trustee -- as well as Wells Fargo as trustee, to clear title under G.L. c. 240, § 6 in connection with properties against which they had completed foreclosures. In both cases, the trustees did not hold written mortgage assignments at the time these foreclosures were noticed and executed. Rather, months following foreclosure, assignments of the subject mortgages were executed to the trustees, with indications of a

3

prior "effective date" that predated the foreclosure. The trustee banks pressed several arguments before both the Land Court and on appeal seeking to legitimize their practices. None were persuasive.

The SJC opened its discussion by repeating the axiom that because foreclosure in Massachusetts is not automatically subject to judicial oversight, the power of sale, as well as the statutes defining it and requiring notice are to be strictly complied with. *Id.,* 2011 WL 38071 at *6. Failure to so comply renders the foreclosure sale "wholly void." *Id., quoting Moore v. Dick,* 187 Mass. 207, 211 (1905). "Because only a present holder of the mortgage is authorized to foreclose on the mortgaged property, and because the mortgagor is entitled to know who is foreclosing and selling the property, the failure to identify the holder of the mortgage in the notice of sale may render the notice defective and the foreclosure sale void." *Id.* The SJC goes on to reject each basis put forth by the trustee banks as a means of establishing their status as "present holders" at the time of foreclosure.

First, the SJC confirmed that mortgage assignments "in blank" do not serve to effectuate a transfer. *Id.,* 2011 WL 38071 at *10. Previously, as a matter of routine practice when a loan was securitized, the originating mortgagee would execute a mortgage assignment that included a blank space where the name of the assignee belonged, to be filled in at a later date. The SJC held "that a conveyance of real property, such as a mortgage, that does not name the assignee conveys nothing and is void; we do not regard an assignment of land in blank as giving legal title in land to the bearer of the assignment." *Id.*

4

Second, the SJC rejected any notion that the mere transfer of the note associated with a particular mortgage was sufficient to assign the mortgage to the new note holder. "In Massachusetts, where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage." *Id.* In these circumstances, the noteholder has an equitable interest in the mortgage, but is not among those statutorily authorized to invoke the power of sale and foreclose. *Id.*

Third, the SJC expressly rejected the title standard on which Defendants relied, REBA Title Standard No. 58, holding that a post-foreclosure assignment, even when backdated, is meaningless unless it is merely confirming an earlier assignment of the mortgage that was actually consummated. *Id.* "To the extent that the plaintiffs rely on this title standard for the proposition that an entity that does not hold a mortgage may foreclose on a property, and then cure the cloud on title by a later assignment of a mortgage, their reliance is misplaced because this proposition is contrary to G.L. c. 183, § 21, and G.L. c. 244, § 14." *Id.*

Last, the SJC addressed the bank trustees' arguments that the securitization documents, standing alone, were sufficient to effect a mortgage assignment. Reviewing the record, and noting that the schedule of mortgages attached to one of the pooling and servicing agreements did not contain the specificity required in any transfer of land, the SJC rejected this argument as well. "Where, as here, mortgage loans are pooled together in a trust and converted into mortgage-backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someone's home or farm and must be

5

treated as such." *Id.*[1] The SJC took pains to note that "[l]ike the sale of land itself, the assignment of a mortgage is a conveyance in land," *id.,* 2010 WL 38071 at *8, and that the bank trustee's pooling and servicing agreement fell short of the requirements that such a transfer requires.

In sum, the SJC's ruling in *Ibanez* is an unequivocal vindication of the legal theory articulated in Plaintiffs' consolidated complaint. Regardless of Defendants' interpretations of *Ibanez*, there is no reason that the stay should not be lifted immediately and allow discovery to proceed without further delay.

### III. TIME IS OF THE ESSENCE IN THIS MATTER

Plaintiffs filed this case in November 2008. *See* Notice of Removal [Docket No. 1], attaching Plaintiffs' complaint as Exhibit 1. The litigation has now been underway for more than two years and it has not progressed past the early stages of discovery. In opposing the motion for a stay, Plaintiffs made clear their position that time was of the essence in this matter:

> Without question, as each month passes in this litigation, the rights of the putative class further erode. The Court need look no further than the docket of this case for evidence of this erosion – the Defendants performed a re-foreclosure of one of the named plaintiffs' homes and have now sold that property to a third party. As these properties are reforeclosed and sold to third-parties, members of the putative class lose whatever chance they now have to redeem their unique properties.

---

[1] Further, the SJC turned away the bank trustees' requests that, in the event that it ruled against them, it limit the effect to a prospective application. Such a limitation is only appropriate where there is a significant change in the common law. *Id.*, 2010 WL 38071 at *11. "The legal principles and requirements we set forth are well established in our case law and our statutes. All that has changed is the [bank trustees'] apparent failure to abide by those principles and requirements in the rush to sell mortgage-backed securities." *Id.*

6

Plaintiffs' Opposition to Ablitt's Motion to Stay [Docket No. 184] at 2 (internal citation omitted).

The Court's July 28, 2010 Order recognized these concerns, Order at 4-5 & n.7, but found them to be outweighed by the judicial efficiency occasioned by a stay. Now that the Court has the benefit of the SJC's ruling, there is no need to delay the discovery process by an additional one month. To the extent that the Court wishes the parties to brief the specific ramifications of *Ibanez*, it will undoubtedly be a central focus of the parties' future briefing at the appropriate stage of the litigation, including class certification, summary judgment and trial. For present purposes, as the parties are engaged in discovery, there can be little doubt that the *Ibanez* ruling requires this case to proceed.

## IV.   CONCLUSION

For all of the above reasons, the Court should lift the stay imposed by the Court's July 28, 2010 Order and allow discovery to proceed immediately.

>Respectfully Submitted,
>
>Darlene Manson, Germano DePina, Robert Lane, Ann Coiley, Geraldo Dosanjos and Roberto Szumik
>
>By their attorneys,
>
>*/s/ Gary Klein*
>Gary Klein BBO, No. 560769
>Shennan Kavanagh, BBO No. 655174
>Kevin Costello, BBO No. 669100
>Roddy, Klein & Ryan
>727 Atlantic Ave., 2nd floor
>Boston, MA  02111
>Tel. 617-357-5500
>Fax. 617-357-5030

7

## LOCAL RULE 7.1 CERTIFICATE

I, Kevin Costello, hereby certify that counsel for all parties have conferred via email with regard to this motion. The Defendants do not agree to the relief sought herein.

*/s/ Kevin Costello*
Kevin Costello

## CERTIFICATE OF SERVICE

I, Kevin Costello, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants by first class mail, postage prepaid, on January 10, 2011.

*/s/ Kevin Costello*
Kevin Costello