UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-12166-RGS

DARLENE MANSON, GERMANO DEPINA, ROBERT LANE and ANN
COILEY, and GERALDO DOSANJOS, on behalf of themselves and all others
similarly situated

v.

GMAC MORTGAGE, LLC, U.S. BANK NATIONAL TRUST ASSOCIATION,
as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through
Certificates 2006-EQ1, and as Trustee for Credit Suisse First Boston 2005-9, and
EMC MORTGAGE CORPORATION, and HARMON LAW OFFICES, P.C., and
ABLITT LAW OFFICES, P.C.

MEMORANDUM AND ORDER ON PLAINTIFFS'
MOTIONS FOR CLASS CERTIFICATION

April 30, 2012

STEARNS, D.J.

This putative class-action was brought by Massachusetts residents whose homes

were foreclosed, or against whom an invalid foreclosure process was initiated, between

November 20, 2004, and December 31, 2008.   Plaintiffs seek declaratory relief in the

form of notice to class members that despite being declared in default on their

mortgages, they may nonetheless have a property interest in their present or former

homes.[1]  They also request that any costs and fees assessed against class members as a result of the foreclosure process be deducted from any remaining mortgage balance due and that class members who have lost their homes be reimbursed for any consequential damages.[2]  *See* Consolidated Am. Class Action Compl. (Compl.) ¶ 6.[3] Plaintiffs maintain that the defendant foreclosing entities and law firm defendants have repeatedly violated Massachusetts statutory requirements by foreclosing on properties (or aiding foreclosure) without first obtaining valid  assignments of the underlying

---

[1] In *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 646 (2011), the Supreme Judicial Court (SJC) of Massachusetts held that under Massachusetts law a foreclosure by sale that does not strictly comply with the statutory terms of Mass. Gen. Laws. ch. 244, § 14, is void (and not merely voidable).  *See also Bevilacqua v. Rodriguez*, 460 Mass. 762, 778 (2011) ("Our recent decision in the case of [*Ibanez*] . . . concluded that '[a]ny effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under [the relevant] statutes is void.'  We decline the invitation to revisit this issue.").  When a foreclosure is void, the foreclosure is a legal nullity and the parties are returned to the position they would have been in, but for the invalid foreclosure.  *See Oum v. Wells Fargo, N.A.*, --- F. Supp. 2d ----, 2012 WL 390271, at *5 (D. Mass. Feb. 8, 2012).

[2] Plaintiffs assert that costs and fees for the foreclosure were charged to mortgagors' accounts and remain either a part of the principal balance or a part of any deficiency owed.

[3] Plaintiffs assert claims of wrongful foreclosure (Count I); improper notice (Count II); breach of the duty of good faith and reasonable diligence (Count III); violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. (Count IV); and violations of Mass. Gen. Laws ch. 93A (Count V). The named plaintiffs additionally bring specific individual claims of wrongful foreclosure and breach of the duty of good faith and reasonable diligence against various defendants (Counts VI through XIII).

mortgages.  *See* Mass. Gen. Laws ch. 244, § 14 & ch. 183, § 21.  *See also* Compl. ¶ 4.

## PROCEDURAL BACKGROUND

On December 31, 2008, the underlying lawsuit was removed to the federal district court from the Massachusetts Superior Court on federal question grounds.  On July 28, 2010, after some initial motion practice, the action was stayed pending the decision of the SJC in *Ibanez*.  In January of 2011, *Ibanez* was published, and this court ordered briefing on the impact of the decision on this case.

On November 15, 2011, plaintiffs filed motions to certify a class against the foreclosing entity defendants, and, separately, a class against the law firm defendants.  Oppositions from the defendants soon followed.  Plaintiffs filed replies to both sets of oppositions.  Law firm defendant Harmon Law Offices, P.C. (Harmon) filed a surreply.  Oral argument was heard on March 14 and 16, 2012.

## FACTUAL BACKGROUND

GMAC Mortgage, LLC (GMAC), U.S. Bank National Trust Association as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates 2006-EQ1, and as Trustee for Credit Suisse First Boston 2005-9 (U.S. Bank), and EMC Mortgage Corporation (EMC) are financial institutions that offer, inter alia, mortgage banking services.  Relevant to this action, EMC and GMAC

serviced home mortgage loans while U.S. Bank acted as the trustee for the securitized

mortgage pools.

When mortgagors default on their loans, servicing institutions – such as

defendants – are responsible for initiating foreclosure proceedings.[4]  In this regard, the

servicing defendants relied on law firm defendants Harmon and Ablitt Law Offices P.C.

(Ablitt) to pursue collections and to insure compliance with the differing foreclosure

formalities in each jurisdiction, including the necessity of executing an assignment prior

to initiating foreclosure.

In October of 2006, plaintiff Darlene Manson refinanced her home in Stoneham,

Massachusetts, with a loan from Aegis Lending Corp. (Aegis) in the amount of

$346,000, secured by a mortgage.  Statement of Facts in Support of Motions to Certify

Class (SOF) ¶ 2; Pls.' Mot. Ex. 3. The mortgage document named Mortgage Electronic

Registration Systems, Inc. (MERS) as the mortgagee.  SOF ¶ 3.  On February 19, 2008,

after Manson's loan had gone into default, she received a letter from Harmon notifying

her that GMAC was the present holder of her mortgage, and that it intended to invoke

---

[4] U.S. Bank, acting as a trustee, had retained Wells Fargo to service the loans
relevant to this case.  With respect to GMAC and EMC, written agreements between
GMAC and EMC and the respective mortgagees provided that GMAC and EMC – as
the loan servicers – would foreclose in the servicer's name.  Typically the mortgagee
granted a power of attorney to the loan servicer for this purpose.

its power of sale.  *Id.* ¶ 4.[5]  On March 25, 2008, GMAC conducted the foreclosure sale

and bought the home.  *Id.* ¶ 6.  On April 29, 2008, an employee of Harmon executed

a mortgage assignment that transferred Manson's mortgage from MERS to GMAC. *Id.*

¶ 7.  The assignment was recorded in the Middlesex South Registry of Deeds on May

6, 2008.  *Id.* ¶ 8.  In 2009, Manson was evicted from the home.  *Id.* ¶ 10.[6]

Plaintiffs Ann Coiley and Robert Lane refinanced their home in Billerica,

Massachusetts, in September of 2006 with a loan from Argent Mortgage Company,

LLC (Argent), in the amount of $283,000, secured by a mortgage.[7]  SOF ¶ 12; Compl.

---

[5] On February 27, March 5, and March 12, 2008, notice was published in the Stoneham Independent newspaper announcing the foreclosure of Manson's home by GMAC.  Through Harmon, GMAC also preserved its right to seek a deficiency against Manson.  *Id.* ¶ 5.

[6] According to foreclosing entity defendants, Manson admits that she was not then, and is not now, in a position to reinstate her loan.  Foreclosing Entity Defs.' Opp'n at 10.

[7] According to the foreclosing entity defendants the following structure was in place:  Argent is a wholly owned subsidiary of Ameriquest Capital Corporation (ACC). Pursuant to a Mortgage Loan Purchase and Warranties agreement, Argent originated loans and transferred them to Ameriquest Mortgage Company (also a wholly owned subsidiary of ACC).  Ameriquest Mortgage was additionally a party to a September 17, 2004 Mortgage Loan Purchase and Interim Servicing Agreement (MLPA) providing for the transfer of loans from Ameriquest Mortgage to EMC.  On November 30, 2006, Ameriquest Mortgage assigned and conveyed the Lane and Coiley mortgage loan (as well as 718 others) to EMC pursuant to the MLPA.  Ameriquest Mortgage transferred the servicing of the Lane and Coiley loan to EMC on January 22, 2007.  Foreclosing Entity Defs.' Opp'n at 11.

Ex. T.  On December 19, 2007, and again on July 11, 2008, after the loan had gone into default, Ablitt notified Coiley and Lane that EMC, the entity that currently held their mortgage, intended to invoke its power of sale.  SOF ¶ 13.[8]  On September 9, 2008, after the foreclosure had been noticed in EMC's name, a representative of Argent executed an assignment of the mortgage to EMC.[9]  The assignment was recorded in the Middlesex North Registry of Deeds on November 6, 2008.  SOF ¶ 15.[10]  On September 15, 2008, EMC conducted a foreclosure sale on the home.  *Id.* ¶ 17.  Eviction proceedings ensued, but were later dismissed.[11]  SOF ¶ 18.  EMC allegedly refused to accept rent from Coiley and Lane in exchange for their continued occupancy of the property, but the couple were permitted to remain in the home.  *Id.* ¶ 19.

In April of 2006, plaintiff Germano DePina obtained a loan in the amount of

---

[8] "On July 17, July 24 and July 31, 2008, newspaper notice was published announcing the foreclosure of the Lane and Coiley home by EMC, which again was identified as the present holder of the Lane and Coiley Mortgage and the entity that was to invoke the power of sale to foreclose.  EMC also preserved its right to seek a deficiency against Ms. Coiley and Mr. Lane." *Id.* ¶ 14.

[9] EMC asserts that the 2008 assignment merely confirmed the prior assignment from 2006 pursuant to the MLPA transaction.  Foreclosing Entity Defs.' Opp'n at 11.

[10] The assignment "indicated that it was 'effective' on November 30, 2006, but did not indicate that it was confirmatory of an earlier assignment, nor did it identify an earlier transaction to which Argent and EMC were parties." *Id.* ¶ 16.

[11] According to EMC, eviction proceedings were dismissed by way of a joint stipulation entered on April 24, 2009.  Foreclosing Entity Defs.' Opp'n at 12.

$336,000, from EquiFirst Corporation (EquiFirst) to purchase a home in Roxbury, Massachusetts, in exchange for which he granted EquiFirst a mortgage.[12]  SOF ¶ 20. MERS was the named mortgagee.  *Id.* ¶ 21.  DePina defaulted on the loan, and in April of 2008, Harmon issued a notice of sale, informing him that U.S. Bank held his mortgage in its capacity as trustee of a specified trust and that U.S. Bank intended to foreclose.  *Id.* ¶ 23.[13]  In April of 2009,[14] Harmon executed an assignment of the mortgage from MERS to U.S. Bank; the assignment was then recorded in the Suffolk Registry of Deeds.  SOF ¶ 25.[15]  The foreclosure never in fact occurred, as DePina

---

[12] U.S. Bank asserts the following additional details: on June 1, 2006, EquiFirst transferred the loan (with an assortment of others) to Lehman Brothers Bank FSB; it was then assigned (as part of the larger portfolio) to Lehman Brothers Holdings Inc.; and then conveyed to Structured Asset Securities Corp.; which in turn conveyed all "right, title, and interest" in the portfolio (of which the DePina loan was part) to U.S. Bank as Trustee.  Foreclosing Entity Defs.' Opp'n at 12.

[13] The requisite statutory notice was published in the Boston Herald, *see* Mass. Gen. Laws ch. 244, § 14.  *Id.* ¶ 24.  Defendants assert that DePina also received a prior letter from Harmon on January 7, 2008, explaining that it was retained by America's Servicing Company "a d/b/a of the Wells Fargo division that services residential mortgages" to foreclose.  Foreclosing Entity Defs.' Opp'n at 13.

[14] U.S. Bank asserts that the confirmatory assignment was executed on February 5, 2009.  Foreclosing Entity Defs.' Opp'n at 13.

[15] "The DePina Assignment states that it was 'effective' on January 3, 2008, but did not indicate that it was a confirmatory assignment, nor did it indicate that it was confirming an earlier transaction to which MERS and U.S. Bank were parties."  SOF ¶ 26.

entered into a trial period under the Home Affordable Modification Program (HAMP) in October of 2009.[16]  SOF ¶ 27.  According to plaintiffs, the costs and fees associated with the initial foreclosure process were folded into DePina's unpaid principal balance as part of his loan modification.[17]   SOF ¶ 27.

Plaintiff Geraldo Dosanjos obtained a loan in August of 2005 from Credit Suisse First Boston Financial Corp. in the amount of $356,250 to purchase a home in Millis, Massachusetts, and, in exchange, granted an accompanying mortgage. *Id.* ¶ 28.  MERS was the named mortgagee.[18]  SOF ¶ 29.  In August of 2007, after Dosanjos went into default on his loan, Harmon sent him a notice of sale identifying U.S. Bank as the entity that held his mortgage in a trustee capacity and informing him that U.S. Bank intended

---

[16] DePina and several other plaintiffs sued Wells Fargo based on its alleged failure to modifiy their loans under HAMP.  *See Bosque v. Wells Fargo Bank, N.A.*, No. 10-10311-FDS (D. Mass. Feb. 23, 2010).  After DePina was given the opportunity to have his loans further modified under HAMP, his claims were dismissed. Foreclosing Entity Defs.' Opp'n at 13.

[17] According to U.S. Bank, DePina claims at least $3,264 in damages for fees and costs associated with the foreclosure proceedings that were added to his principal balance.  He did not specify any other damages during his deposition.  Foreclosing Entity Defs.' Opp'n at 14.

[18] Again, U.S. Bank adds further details: "On September 1, 2005, the loan transferred to U.S. Bank, as Trustee, via the Credit Suisse First Boston 2005-9 pass-through securitization transaction, in which Credit Suisse conveyed all right, title, and interest to the portfolio including Mr. Dosanjos's loan to U.S. Bank, as Trustee, pursuant to a Pooling and Servicing Agreement."  Foreclosing Entity Defs.' Opp'n at 14.

to foreclose.[19]  *Id.* ¶ 30.  On September 27, 2007, U.S. Bank conducted a foreclosure sale and bought the property.  *Id.* ¶ 32.  On October 3, 2007, Harmon executed an assignment of the mortgage from MERS to U.S. Bank, and the assignment was recorded in the Norfolk Registry of Deeds in January of 2008.[20]  *Id.* ¶ 33.

The law firm defendants, Harmon and Ablitt, were responsible for "enforcing security interests created by mortgages on residential property through foreclosure and related default services."  *Id.* ¶¶ 50-51, 66.  Upon initiation of foreclosure proceedings, the borrower becomes responsible for any fees charged in connection with the foreclosure.  According to plaintiffs, Harmon and Ablitt taxed these costs and fees to the borrowers' accounts.  *Id.* ¶ 48.[21]  Harmon also participated in the process of "calling for, drafting and executing the mortgage assignments" at issue, and executed assignments by virtue of their power-of-attorney privileges.  *Id.* ¶ 56.  The law firm defendants also oversaw the execution of the power-of-sale by way of auction and

---

[19] The requisite notice of foreclosure was made in the appropriate locally circulated newspaper.  *Id.* ¶ 31.

[20] "The Dosanjos Assignment stated that it was 'effective' on July 5, 2007, but did not indicate that it was a confirmatory assignment, nor indicate that it was confirming an earlier transaction to which MERS and U.S. Bank were parties."  *Id.* ¶ 34.

[21] The foreclosing entity defendants note that "for obvious reasons, these fees and costs were almost never recovered."  Foreclosing Entity Defs.' Opp'n at 5.

made entry on the property, as the representative of the foreclosing entity. *Id.* ¶¶ 61-62, 73, 75-76.

## DISCUSSION

"[D]istrict courts have broad discretion to grant or deny class certification." *McCuin v. Sec'y of Health & Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987). "Plaintiffs have the burden of proving that class certification is appropriate, and to do so they 'must establish the four elements of Rule 23(a) and one of the several elements of Rule 23(b).'" *DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 95 (D. Mass. 2010), quoting *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003); *see* Fed. R. Civ. P. 23(a)-(b).

The Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Although at least one core issue of fact or law must shape the class, Rule 23(a) does not require that every class member share every factual and legal predicate of the action. *See In re Lupron® Mktg. and Sales Practice Litig.*, 228 F. R. D. 75, 88 (D. Mass. 2005), citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 817 (3d Cir. 1995). Rule 23(b) requires that one of its three prongs be satisfied.[22]   For purposes of this case, the

_____

[22] Plaintiffs request the court find Rule 23(b)(2), or (b)(3), or both, satisfied. *See Lemon v. Int'l Union of Operating Eng'rs*, 216 F. 3d 577, 581 (7th Cir. 2000) ("The

plaintiffs must show either that "(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(2) & (b)(3).

***Putative Class Against Foreclosing Entity Defendants***[23]

Plaintiffs seek to certify three classes defined as follows:

*GMAC Class*: All Massachusetts residents against whose property a foreclosure process was commenced or completed for which GMAC was named as foreclosing mortgagee between November 20, 2004, and December 31, 2008, and for which there is a recorded mortgage assignment transferring the subject mortgage into the name of GMAC executed after the date on which the Notice of Sale associated with that foreclosure process was issued under Massachusetts law.

*U.S. Bank Class*:  All Massachusetts residents against whose property a foreclosure process was commenced or completed for which U.S. Bank as Trustee was named as foreclosing mortgagee for a trust serviced by

---

district court could certify a Rule 23(b)(2) class for the portion of the case addressing equitable relief and a Rule 23(b)(3) class for the portion of the case addressing damages.").

[23] Plaintiffs' Amended Consolidated Complaint pleads a defendant class, but plaintiffs assert in their motions that they are not presently moving for certification of such a class.

Wells Fargo or America's Servicing Company between November 20, 2004, and December 31, 2008, and for which there is a recorded mortgage assignment transferring the subject mortgage into the name of U.S. Bank as Trustee for a particular trust executed after the date on which the Notice of Sale associated with that foreclosure process was issued under Massachusetts law.

*EMC Class*: All Massachusetts residents against whose property a foreclosure process was commenced or completed for which EMC was named as foreclosing mortgagee between November 20, 2004, and December 31, 2008, and for which there is a recorded mortgage assignment transferring the subject mortgage into the name of EMC executed after the date on which the Notice of Sale associated with that foreclosure process was issued under Massachusetts law.

### Rule 23(a)

"[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-2552 (2011) (internal citations omitted).

### Numerosity

As a practical matter, the numerosity requirement is met whenever the joinder of members of a proposed class is not feasible. Plaintiffs contend that the proposed

classes are sufficiently numerous because they encompass more than 8,000 present or former homeowners.  *See* SOF ¶¶ 64, 78-79.  Joinder of this number of plaintiffs is manifestly impracticable.   The records of the law firm defendants indicate that at a minimum over forty foreclosures involving U.S. Bank and EMC are at issue.  *Id.*

GMAC does not challenge numerosity.  EMC and U.S. Bank, however, see the matter differently.  They assert that the law firm defendants' documents "say nothing about whether other documentation establishes defendants' ownership of the loans and standing to foreclose . . . the most that plaintiffs can say is that there *might* be an *Ibanez* problem with respect to as many as forty loans, but determining the actual number would require the review of additional (and case-specific) evidence entirely absent from their analysis."  Foreclosing Entity Defs.' Opp'n at 27-28.  The court does not agree. Based on the publicly recorded documents, the likelihood that at least forty *Ibanez* violations did occur is sufficient to meet the "low threshold for numerosity." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009), citing *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds [forty], the first prong of

Rule 23(a) has been met.").[24]

### *Commonality*

"What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores*, 131 S. Ct. at 2551 (citation omitted).  To get to the heart of whether the commonality requirement is met, the court must examine "considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Id.*, at 2552 (citations omitted).

The glue that purports to bind the proposed class is the possibility of collective Mass. Gen. Laws ch. 244, § 14 (*Ibanez*) violations.  However, the determination of whether the statute was in fact violated would require 8,000 highly individualized and case-specific inquiries.  In other words, the glue would only adhere *after* the merits of each case had been fully investigated and only in those instances in which an *Ibanez* violation in fact was uncovered.  At that point, however, there would no longer be any common questions of fact or law – all that would remain is the calculation of plaintiffs'

---

[24] So-called "*Ibanez* violations" are prevalent enough in the Commonwealth to have caused the Attorney General of Massachusetts to file a complaint against foreclosing entities (including some of the named defendants here) for committing such violations.  *See Commonwealth of Massachusetts v. Bank of Am.*, Civil Action No. 11-4363 (Dec. 1, 2011).

varying damages (if any).[25]

Plaintiffs, for their part, attempt a salvage operation by arguing that there is at least one common question of law to be answered before class issues can be resolved. They contend that *Ibanez* did not decide whether a foreclosure sale ostensibly authorized by a pre-sale assignment is nonetheless voided by a contradictory post-dated assignment that is recorded only after the sale.  Plaintiffs assert that because the public is entitled to rely on the title record for its truth, a post-dated recorded assignment takes precedence over an unrecorded pre-sale assignment.  *See Bd. of Selectmen of Hanson v. Lindsay*, 444 Mass. 502, 508 (2005) (citations omitted) ("In this Commonwealth, '[b]ecause of the long-recognized inevitability and ubiquity of controversies over land, the Massachusetts Bay Colony enacted a recording act as early as 1640 for the declared purpose that '[e]very man may know what estate or interest other men may have in houses, lands or other hereditaments they are to deal.'").

Defendants counter that a post-dated recording merely acts as an official confirmation of the prior assignment.  Moreover, defendants argue that the SJC effectively settled this issue by the approach that it took in *Ibanez*.  There, only after

---

[25] As defendants (correctly) point out, *Ibanez*, as amplified by *Bevilacqua*, has already answered the question of law that precipitated the original filing of this case, that is, whether a foreclosing entity is required to be in possession of a valid assignment of the mortgage prior to the foreclosure.

being persuaded that an executed pre-sale assignment "clearly and specifically identif[ying] the mortgage at issue as among those assigned" could not be located in the underlying securitization documents, did the SJC deem the foreclosure on Ibanez's property void under Mass. Gen. Laws ch. 244, § 14.  *See Ibanez*, 458 Mass. at 651.

Most important, a declaration by this court of the import of the SJC's effort to grapple  with the legal significance of post-dated recorded assignments would not "drive the resolution of the litigation," *see Wal-Mart*, 131 S. Ct. at 2251, and is therefore irrelevant to a commonality determination.  A post-dated recorded assignment becomes relevant under *Ibanez* only after an off-record assignment is identified.  This necessarily occurs only at the conclusion of the inquiry into the individual circumstances of each prospective class member.  This is too late in the game to qualify as a "common" question for class certification purposes.[26]

---

[26] For similar reasons plaintiffs cannot demonstrate that their putative class is ascertainable.  "While not explicitly mentioned in Rule 23, an implicit prerequisite to class certification is that a 'class' exists – in other words, it must be 'administratively feasible for the court to determine whether a particular individual is a member.'" *Donovan v. Philip Morris USA, Inc.*, 268 F. R. D. 1, 9 (D. Mass. 2010), quoting *Kent v. SunAmerica Life Ins. Co.*, 190 F. R. D. 271, 278 (D. Mass. 2000).  It is not possible to ascertain a class relying solely on public records, as plaintiffs would have the court do, because a post-dated recording evinces only the *possibility* that a particular homeowner might fall within the class.  As defendants argue, only by an inquiry into the securitization documents (or other pooling agreements) that underlie most of the mortgages at issue can this possibility become a certainty.  *See Ibanez*, 458 Mass. at 651 ("Where a pool of mortgages is assigned to a securitized trust, the executed

*Typicality*

"The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.  Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest."  *Wal-Mart*, 131 S. Ct. at 2551 n.5, quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).  The purpose of the typicality requirement is to "align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 311 (3d Cir. 1998).  The alignment with absent class members need not, however, be perfect.  *See In re Credit Suisse*, 253 F. R. D. 17,  23 (D. Mass. 2008).  That damages may differ among the various class members, for example, "is of little consequence to the typicality determination when

---

agreement that assigns the pool of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage at issue as among those assigned, may suffice to establish the trustee as the mortgage holder.").

the common issue of liability is shared." *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F. R. D. 12, 28 (D. D. C. 2001), quoting *Lewis v. Nat'l Football League*, 146 F. R. D. 5, 9 (D. D. C. 1992).

The class representative nominees fall into several categories of putative class membership: those whose homes have been foreclosed and who have been evicted (Manson and Dosanjos); those whose homes have been foreclosed but who have yet to be evicted (Lane and Coiley); and those who kept their homes pursuant to a HAMP mortgage modification but who incurred extra fees and charges as a result of the initiation of the foreclosure process (DePina).  Plaintiffs argue that the difference in circumstances among the nominees does not necessarily disqualify them as "typical" class representatives (which is true).  The problem, rather, is that the representative plaintiffs are "atypical" because they have already received the primary relief sought for all class members, that is, notice-relief.  Plaintiffs seek to require defendants to notify affected present or former homeowners (estimated to be some 8,000 in total) that they may have a latent interest in their properties.  But the representative plaintiffs are already well-aware of this latent property interest – and to vindicate their rights requires only review of the documents underlying their mortgages to determine whether an *Ibanez* violation occurred.

**Adequacy**

Under the fourth and final requirement of Rule 23(a), the named plaintiffs must show that the proposed action will fairly and adequately protect the interests of the class.  "The [adequacy] rule has two parts.  The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation."  *Andrews v. Bechtel Power Co.*, 780 F.2d 124, 130 (1st Cir. 1985).[27]  With respect to the first part of the rule, the court is persuaded that were a class to be certified plaintiffs' divergent options (as to whether they might seek to resume mortgagor status or choose to remain free of the encumbrances of "underwater" property or accept some other relief) would not lead to conflicts of interest with potential class members.  This, however, is beside the point as plaintiffs cannot met the commonality and typicality requirements of Rule 23(a).

### Rule 23(b)(2)

Although plaintiffs do not meet the requirements of Rule 23(a), I will address

---

[27] It is unnecessary to address the second requirement of the adequacy test as this court has recently found members of plaintiffs' counsel team to meet the adequacy test of Federal Rule of Civil Procedure 23(g)(1)(A), and has appointed members of the team to serve as interim co-lead counsel in a national multi-district matter involving mortgage-related issues.  *See, e.g., In re JPMorgan Chase Mortg. Modification Litig.*, No. 1:11-MD-2290-RGS.

Rule 23(b) for completeness purposes. Rule 23(b)(2) requires a showing that defendants "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *See Wal-Mart*, 131 S. Ct. at 2557 & 2558 (For classes certified under (b)(2) "the relief sought must perforce affect the entire class at once . . . . The Rule provides no opportunity for . . . (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.").

According to plaintiffs, class litigation will most efficiently address the uncertainty created by *Ibanez* regarding the title to a number of Massachusetts properties.[28] Plaintiffs seek injunctive relief that includes: (1) notice to former mortgagors that the foreclosure process they were subjected to may be void and that they may have a latent property interest in their foreclosed property; (2) a cancellation of any indebtedness that may have been assessed to mortgagor accounts as a result of the void foreclosure process; (3) corrective credit reporting; and (4) an order enjoining defendants from conducting future foreclosures without obtaining valid prior

---

[28] At oral argument defendants contended that, in reality, title insurance companies have assumed responsibility for most title problems, and, in contrast to plaintiffs' assertions, the state of title in Massachusetts is not in "chaos."

assignments of the underlying mortgages.[29]  Finally, plaintiffs seek a declaration that the foreclosures on their properties are void.

For their part, defendants argue that plaintiffs do not meet the Rule 23(b)(2) injunctive standard, as it has recently been refined in *Wal-Mart*.  "[The Rule] does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."  *Wal-Mart*, 131 S. Ct. at 2557 (emphasis in original).  Here, given their differing circumstances, and the differing types of equitable relief they seek, plaintiffs' request is precisely that which the Supreme Court said in *Wal-Mart* cannot be granted.[30]

### Rule 23(b)(3)

Plaintiffs also seek certification pursuant to Fed. R. Civ. P. 23(b)(3).  Under this

---

[29] With respect to this last request, defendants maintain that they have ceased the practice and have every incentive not to recidivate.

[30] The court will comment briefly on the likely frustrations of granting the relief plaintiffs request.  Sending thousands of former homeowners a notice of the *possibility* that they may have some beneficial interest in their former homes *if* (and only if) they desire (and are able) to resume their mortgage payments is an offer pregnant with expectation but with little likelihood of actually conferring much by way of tangible reward.

prong of Rule 23, plaintiffs request monetary damages including foreclosure fees and

other costs paid to or assessed by the defendants, as well as any consequential damages

resulting from the foreclosure.  *See Wal-Mart*, 131 S. Ct. at 2558 ("We think it clear

that individualized monetary claims belong in Rule 23(b)(3).").

> Framed for situations in which "class-action treatment is not as clearly
> called for" as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3)
> permits certification where class suit "may nevertheless be convenient and
> desirable." Adv. Comm. Notes, 28 U.S.C. App., p. 697.  To qualify for
> certification under Rule 23(b)(3), a class must meet two requirements
> beyond the Rule 23(a) prerequisites: Common questions must
> "predominate over any questions affecting only individual members"; and
> class resolution must be "superior to other available methods for the fair
> and efficient adjudication of the controversy." In adding "predominance"
> and "superiority" to the qualification-for-certification list, the Advisory
> Committee sought to cover cases "in which a class action would achieve
> economies of time, effort, and expense, and promote . . . uniformity of
> decision as to persons similarly situated, without sacrificing procedural
> fairness or bringing about other undesirable results."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).[31]   "The policy at the very

core of the class action mechanism is to overcome the problem that small recoveries

---

[31] "Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria: '(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.'" *Id.* at 615-616.

do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* at 617, quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

### *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Plaintiffs argue that common issues predominate over individual ones because the crux of the adjudication will focus on reconciling electronic records in various public registries with the records kept by the law firm defendants relating to foreclosures conducted (and assignments executed) on behalf of their clients – the foreclosing entity defendants. They further contend that the calculation and award of any consequential damages could be resolved in summary proceedings, and would not overwhelm the common issues of law. However, because, as previously explained, plaintiffs do not meet the test for commonality, the common issues of law almost by definition do not predominate over the individualized ones.

### *Superiority*

Finally, the court is not convinced that a class action is the superior method for adjudicating plaintiffs' rights. After this case was filed, the Massachusetts Attorney General brought an action against a number of foreclosing entities, including GMAC,

in the state court alleging, inter alia, that these entities violated Mass. Gen. Laws ch. 244, §14, by foreclosing on homes without valid assignments of the underlying mortgages. Complaint, *Commonwealth of Massachusetts v. Bank of Am.*, No. 11-3463, (Mass. Super. Dec. 1, 2011), ¶ 26-27, 30, 122.[32]  The Attorney General's Complaint requests a declaratory judgment that the defendants in that action properly register all instruments that transfer the beneficial interest in a mortgage secured by registered land; the imposition of civil penalties of up to $5,000 for each violation of Mass. Gen. Laws ch. 93A (based, in part, on the violations of Mass. Gen. Laws ch. 244, §14); an order

> enjoining all defendants . . . from: initiating any foreclosure without first obtaining a valid, written assignment of the mortgage or other appropriate written documentation verifying that it is the holder of the mortgage; publishing any notice pursuant to Mass. Gen. Laws ch. 244, §14 that fails to identify the present holder of the mortgage . . . [and] [r]equiring each of the Bank Defendants to take all actions necessary to cure defects in title resulting from its initiation of foreclosure proceedings on mortgages secured by land within the Commonwealth where (i) it was not the holder of such mortgages or (ii) it published notices that failed to accurately identify the present holder of the mortgage . . . .

*Id.*  The Attorney General's requested relief largely overlaps that which the plaintiffs

---

[32] U.S. Bank and EMC are not named parties to that action, but EMC is a subsidiary of JPMorgan Chase, a named defendant. That action has been stayed pending the finalization of the national settlement against the country's five largest loan servicers. *See* http://www.nationalmortgagesettlement.com.

seek here. *Cf. Cartwright v. Viking Indus., Inc.*, 2009 WL 2982887, at *14 (E. D. Cal. Sept. 14, 2009) (pending state action was not a bar to class certification where the parallel state action "was not brought on behalf of the public or by a state agency").

It remains open for plaintiffs such as Manson, Lane, Coiley, DePina, and Dosanjos, to pursue individual actions against defendants.  If the foreclosing entity associated with each of these plaintiffs cannot produce evidence that the assignment of the plaintiff's mortgage was made prior to initiation of the foreclosure, then the consequences of the void foreclosure can be determined.[33]  Other potential plaintiffs are likely to be deterred by the practical considerations.  As plaintiffs' counsel conceded at oral argument, the majority of putative class members will be unable or uninterested in restoring their mortgages and may choose to negotiate some other type

---

[33] Defendants argue (correctly) that it is not their burden at this stage in the proceedings to produce exonerating evidence.  Nevertheless, the court notes that while it is possible that a schedule of the pooled mortgages that "clearly and specifically" identifies the particular plaintiffs' mortgages may exist, defendants have not shown that the mortgages of each of the named plaintiffs was indeed part of a specific pool despite the fact that they produced to the court voluminous records including pooling arrangements and trust documents.  Defendants rely on declarations from Denise Apicella, Vice President and Senior Counsel of ACC (Dkt # 243), and James McGarry, a partner with the law firm Goodwin Procter (Dkt # 246), to assert that the named plaintiffs' mortgages were part of the listed pooling arrangements.  However, at no point do the exhibits attached to the affidavits, which are copies of the securitization agreements, clearly identify each plaintiff's mortgage as included in the relevant pool. *See* Dkt # 243,  Ex. 1 at 15;  Dkt # 246, Ex. 16; Dkt # 246, Ex. 220; Dkt # 246, Ex. 17.

of settlement with the foreclosing entity in their cases,[34] or just as likely may be content to see the Attorney General's enforcement action run its course.

### Putative Class Against Law Firm Defendants

Plaintiffs' general contention is that Harmon and Ablitt, working at the behest of the foreclosing entity defendants, knowingly initiated foreclosures in the absence of the required prior assignments of the underlying mortgages.  Plaintiffs assert that "not only were the Law Firm Defendants the primary actors in prosecuting these void foreclosures, they are also directly responsible for the public record that confirms the error."  Pls.' Mot. at 2.  Plaintiffs seek to certify two classes defined as:

> *Harmon Law Class*: All Massachusetts residents against whose property a foreclosure process was commenced or completed by Harmon Law on behalf of any entity between November 20, 2004 and December 31, 2008 for which there is a recorded mortgage assignment transferring the subject mortgage to the foreclosing entity executed after the date on which the Notice of Sale associated with that foreclosure process was issued under Massachusetts Law.

> *Ablitt Law Class*: All Massachusetts residents against whose property a foreclosure process was commenced or completed by Ablitt Law on behalf of any entity between November 20, 2004 and December 31, 2008 for which there is a recorded mortgage assignment transferring the subject mortgage to the foreclosing entity executed after the date on which the Notice of Sale associated with that foreclosure process was issued under

---

[34] The court notes that some banks are now permitting homeowners to deed their equitable interest in the home to the banks in exchange for a lease-back of the premises at a more manageable rent. *See* Nick Timiraos, *BofA Tests an Option to Foreclosure*, The Wall Street Journal, March 23, 2012, at C1.

Massachusetts Law.

*Id.* at 3.[35]

The arguments set out by plaintiffs for certifying these classes against the law firm defendants, as well as the relief sought, is largely identical to the claims brought against the foreclosing entity defendants.  Plaintiffs seek to put the burden of giving notice to class members of the void foreclosures on the law firm defendants, and also seek statutory damages pursuant to the Federal Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1992k(a)(2) (incidental to the injunctive relief sought pursuant to Rule 23(b)(2), *see Wal-Mart*, 131 S. Ct. at 2560-2561), as well as any actual damages attributable to the invalid foreclosure process.

The law firm defendants, for their part, adopt the arguments advanced by the foreclosing entities as to why class certification is inappropriate.  Law Firm Defs.' Opp'n at 6.  The law firm defendants point out (correctly) that they can be found liable only if a client of theirs violated Mass. Gen. Laws ch. 244, §14, that is, their liability is dependant on a foreclosing entity being found to have committed an *Ibanez* violation.  As a result, the same lack of commonality and typicality that attaches to the claims against the foreclosing entities bars class certification with respect to the law firm

---

[35] The proposed class definitions are essentially the same as those proposed for the defendant foreclosing entities.

defendants.

The law firm defendants also argue that even were certification proper, and even if *Ibanez* violations were uncovered, they owed no duty to the putative class members with respect to three of the claims (wrongful foreclosure; improper notice; and breach of the duty of good faith and reasonable diligence).  The court agrees.  A lawyer representing a lender owes no duty to the borrower.  *See Balerna v. Gilberti*, 2012 WL 379592, at *2 n.4 (D. Mass. Feb. 7, 2012) (omitting cited cases) ("Massachusetts law makes it as plain as a pikestaff that an attorney does not owe a fiduciary duty to a person who she does not represent.").  "There is only one possible exception: 'in certain circumstances a lawyer owes a duty of care to a nonclient who he or she knows will rely on the services rendered.'"  *Id.*, quoting *Kirkland Constr. Co. v. James*, 39 Mass. App. Ct. 559, 561 (1995).  Plaintiffs themselves allege that the notices Harmon and Ablitt sent to homeowners included statements such as "PLEASE BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."  Compl. ¶ 63.  No reasonable person receiving such a notice would believe that the sender was seeking to act on his or her behalf.[36]

---

[36] The Mass. Gen. Laws ch. 93A claims are also problematic, as a lawyer generally cannot be held liable for actions taken on behalf of a client where the lawyer

With respect to the FDCPA claims, the defendant law firms contend that "foreclosure is not debt collection."[37]  Law Firm Defs.' Opp'n at 12.  They rely on *Speleos v. BAC Home Loans Servicing, L.P.*, 2011 WL 4899982, (D. Mass. Oct. 14, 2011), for the proposition that the law firms "cannot be held liable under the general provisions of § 1692(f) because [they were] not collecting a debt but rather enforcing

---

has not injected himself directly into trade or commerce, but instead is performing customary legal duties (such as sending notices regarding potential mortgage loan defaults or conducting a foreclosure on behalf of a client).  *See First Enters., Ltd. v. Cooper*, 425 Mass. 344, 347-348 (1997).

[37] In their Complaint, plaintiffs assert that the law firms

violated 15 U.S.C. § 1692(f), which prohibits debt collectors from using unfair or unconscionable means to attempt to collect a debt.  Included among the violations of that section are instances in which the debt collector takes or threatens to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest. 15 U.S.C. § 1692(f)(6)(A).  By sending communications on behalf of an entity that was not the proper holder of a mortgage assignment at that time, the Law Firm Defendants violated 15 U.S.C. § 1692(e)(2), which prohibits debt collectors from using any false, deceptive or misleading representation or means in connection with the collection of any debt.  By sending communications on behalf of an entity that was not the proper holder of an assignment at that time, the Law Firm Defendants violated § 1692(g), which requires a debt collector to disclose, either in the initial communication or in a notice within five days of the initial communication, the correct name of the creditor to whom the debt is owed.

Compl. ¶¶ 328-330.

a security interest." *Id.* at *6.  Plaintiffs, for their part, argue that when *Speleos* is read

further, defendants' argument collapses.

> Defendant may, of course, still be liable under § 1692f(6), which is specifically applicable to the enforcement of security interests.  *See Maynard v. Cannon, P.C.*, 650 F. Supp. 2d 1138, 1142-43 (D. Utah 2008) (holding that law firm engaged solely to initiate a nonjudicial foreclosure by enforcing the security interest was subject only to § 1692f(6)).  That subsection prohibits enforcing such an interest where there is "no present right to possession of the property claimed as collateral." § 1692f(6)(A).  The question is thus whether OrlansMoran foreclosed on the Property when there was no present right to possess it.

*Id.*  Here, as noted in *Speleos,* the law firms were attempting to enforce a security

interest when they lacked authority to do so.  "A court should look to state law

requirements to determine whether there was a present right to possession under the

FDCPA." *Id.*, quoting *Revering v. Norwest Bank Minn., N.A.*, 1999 WL 33911360, at

*5 (D. Minn. Nov. 30, 1999).  General Laws ch. 244, §14, is conclusive on the issue:

if a violation of the statute occurred then the law firm defendant in question had no

present right to possession, and the FDCPA protections are triggered.  The circle,

however, remains unbroken.  *If* a section 14 violation occurred, *then* the law firm

whose client is implicated may be liable under the FDCPA.  Because of this

contingency, the FDCPA claims add no real heft to the class certification argument.

## ORDER

For the foregoing reasons, plaintiffs' motions for class certification with respect

to the claims against the foreclosing entity defendants, and, separately, against the law firm defendants, are <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE